## THE BOARD OF COMMISSIONERS OF BARTHOLOMEW COUNTY *v.* WRIGHT.

PAUPERS—COUNTY POOR.—It is not the intention of the poor laws of this State to require that all persons needing temporary relief shall be removed to the county asylum before receiving it.

SAME—STATUTES CONSTRUED.—It is the obvious general purpose of the poor laws of this State to make the mode of giving relief to paupers a county system and not a township system, and to make the township trustees subordinate to the county commissioners.

SAME.—If a claim for services rendered to the poor of a county or township be disallowed by the county board, in whole or in part, the claimant may appeal, or, at his option, bring an action against the county.

APPEAL from the *Bartholomew* Circuit Court.

HANNA, J.— *Wright* sued the appellants for medical services rendered to two persons "who were in, and *bona fide* residents of, *Columbus* township, in said county, and were a temporary charge as paupers on said county and township, and were not in the poor house or jail, nor was there any physician employed by the county whose business it was to attend upon them, and said services were rendered at the request and under the employment of the trustee of said township," &c.

There was a demurrer overruled to this complaint, and upon that ruling the first point is made.

It is not averred that there was a poor house, or asylum, in the county; if it appears at all from the complaint it is only inferentially.

It is not clear, therefore, that, upon the demurrer to the complaint, the question argued, and a decision of which is sought, is presented; but as the same question is raised by certain paragraphs of the answer, we will examine it. That question is, whether a resident of a township, who may become temporarily, as in this case by small pox, a charge upon the public, must be taken to, and furnished with the needful help by those employed at the county asylum.

It has been decided, 20 Ind. 250, that persons not inhabitants, &c., who may become a temporary charge upon the public, are so far county paupers, as to be entitled to the benefits of the county asylum, and that the superintendent is bound to receive them as such, under section *thirteen*, which authorizes overseers of the poor to place temporary paupers, not residents of the township, in the asylum.

It has also been held that an employment of a physician to attend upon the poor generally of the county, does not make it his duty to attend upon a non-inhabitant who may become a temporary charge, and not taken to the asylum. 17 Ind. 343. Still, neither of these cases decides whether a resident who may become a temporary charge, must be removed to the asylum, in instances when it can be done.

It is urged that this is the proper construction of the whole statutes upon the subject of the poor, especially in view of questions of economy.

It is well decided in the case cited from 17 Ind. that the general system provided for extending relief to the poor, in a county, has reference only to the poor, resident in such county; that any relief extended to transient persons is but exceptional

to such general system. In view of this it would, therefore, be presumed that contracts would be made with reference to the persons who might legally be placed by the authorities in the asylum. The record would show who, and how many persons, were permanently on the books as paupers. As a general proposition it is provided that those who are permanent paupers shall be taken to the asylum when one is prepared. If temporary paupers must be placed in the asylum we do not well see upon what basis a bidder would make his calculations as to the amount for which he would be willing to keep the poor of the county, unless such bids should be for each person by the day or week, which, we believe, is not in accordance with the usual course pursued.

We are, upon the whole, inclined to the opinion that it was not the intention of the framers of these statutes that residents, requiring mere temporary relief, should necessarily be removed, before receiving the same, to the asylum. To this effect is the intimation in *The Board* v. *Wheeldon*, 15 Ind. 148, and *The Board* v. *Saunders*, 16 Ind. 405.

The question of whether it would be the duty of a physician, employed by the county to attend generally to the paupers thereof, or of a township, to render service to such persons as the overseer might deem to be temporarily entitled to aid, is not here involved, for it is not averred that a physician had been so employed.

Another question is argued as being raised by the demurrer, and that is, the right of the plaintiff to sue the defendants for the services, conceding the same to have been rendered under a proper employment by the township trustee. It is insisted that, as the employment was by the township trustee, and as the township is a corporation for which the trustee acts, he alone, in his official capacity, or the corporation, is responsible for the employment; that whatever may be said as to the ultimate responsibility of the county is

with reference to such responsibility to the township, and not to the individual by the latter employed.

This proposition is based upon the first section of the act, 1 G. & H. 493, which makes trustees of townships, overseers of the poor; the sixth section which gives said overseers the oversight of all poor persons in the township; the nineteenth section which makes it the duty of the overseers to make a return to the county auditor of the sums of money required for the poor of their respective township, within fifteen days after every such contract herein provided for shall have been made; and the twenty-second and twenty-third sections, which provide for annual settlements of each trustee with the county commissioners.

The point is pressed upon the nineteenth section, in connection with the others, that, without doubt, the return therein named is in regard to contracts made by overseers for the yearly keeping of paupers where no asylum exists in a county. By section seven, it is made the duty of the overseers to give public notice, in such instances, and receive and act upon sealed proposals, to take care of paupers resident in each township.

But the whole tenor of the act shows that the system of relief is a county system, not that of townships. The township and township officers are made the subordinate mediums through which the county acts for the benefit of this unfortunate class of persons. By section four it is said: "Every county shall relieve and support all poor and indigent persons lawfully settled therein." By the sixth section, they are spoken of as a "county charge." By the thirty-fifth section the board of county commissioners is authorized to levy a tax for the support of the poor. If the township was liable to pay for the support of the poor therein, in the first instance, the authority should have been given to levy the tax for that purpose. The county tax would then be to reim-

burse to such townships the sums so advanced and not directly to support the poor.

The next point made is upon the sixth and seventh paragraphs of the answer, which set up that, at the *March* term of the Board of County Commissioners, said plaintiff filed his claim for these identical services, upon and for which an allowance was made by said Board to said plaintiff, payable out of the county treasury; that afterwards, at the *June* term in said year, the same claim for the same services was again filed before the said Board, and an allowance refused, because it had been passed upon as aforesaid at the preceding term; that plaintiff then instituted this suit thereon in the Circuit Court, said allowance still standing, &c.

These paragraphs show that the Board did not allow the full amount of the account or claim presented, which, we suppose, accounts for its subsequent presentation again. The answer is in substance a former recovery. Are the proceedings of a county board of such a character that they can, in this instance, be set up as a defence?

It has been repeatedly held by this Court that the board of county commissioners, under organizations similar to that which now exists, and with substantially the duties now devolved upon such tribunals, were and are inferior courts of record—judicial tribunals for certain purposes. The organization and duties are purely statutory. R. Stat. 1831, p. 131; R. Stat. 1838, p. 151; R. Stat. 1843, p. 183; 1 G. & H. 247; *The State* v. *Conner*, 5 Blkf. 326; *id.* 462; *Rhode* v. *Davis*, 2 Ind. 53; *The Board, &c.*, v. *Cutler*, 7 *id.* 6; *Rosenthal* v. *The Madison, &c.*, 10 Ind. 361. From these adjudications, in reference to the acts of the Board under the statutes cited, and that of *Gaston* v. *The Board, &c.*, as to the conclusiveness of such acts, the argument is based that an allowance, or passing upon a claim, can not, in subsequent proceeding, be thus ignored. Whatever force exists in the arguments, as applied

to the acts of this tribunal, we need not determine, it appears to us, in view of section ten of an act to authorize and limit allowances by courts and boards, 1 G. & H. 64, which provides for appeals, &c., and: "If a claim be disallowed in whole or in part, the claimant may appeal; or, at his option, bring an action against the county."

*Per Curiam.*—The judgment is affirmed, with 3 per cent. damages, and costs.

*Francis T. Hord*, for the appellant.

*N. T. Hauser*, for the appellee.