Filed June 15, 1888.

---

No. 13,313.

## THE BASS FOUNDRY AND MACHINE WORKS v. THE BOARD OF COMMISSIONERS OF PARKE COUNTY ET AL.

COUNTY.—*Claims Against.—Original Action Upon.—Statute Construed.*—The act of March 9th, 1885 (Acts of 1885, p. 80), gives one having a claim against a county the right to bring an original action against the county, in case the board of commissioners shall disallow his claim, in whole or in part.

SAME.—*Presentation of Claim to Board of Commissioners.— Complaint in Circuit Court.—Sufficiency of.*—A claim against a county must, under the existing statute, be first presented to the board of commissioners before the bringing of a suit thereon; but where a complaint against the county is

Bass Foundry and Machine Works v. Board of Comm'rs of Parke Co. et al.

filed in a court of general jurisdiction, it is not bad on demurrer for failing to aver the presentation of the claim to the board of commissioners, and its disallowance, but such facts must be brought forward by plea.

SAME.—Construction of County Building.—Abandonment by Contractor.—Board of Commissioners May Complete.—Where the contractor for the construction of a county building abandons his contract after a material portion of the work has been performed, the board of county commissioners has incidental power to take charge of the work and complete the building, without adopting new plans and specifications or letting a new contract, and the county is liable for money, labor or materials furnished at the request of the board and used in the construction of the building.

SAME.—Liability of County for Materials.—Contractor's Debts.—In such case the county is liable for money, labor or materials furnished at the request of the board and used in the construction of the building after the abandonment of the work by the contractor, but the board has no power to assume any indebtedness of the contractor for materials furnished to him, and for such indebtedness the county can not be made liable.

From the Parke Circuit Court.

R. C. Bell, S. L. Morris, J. Morris and J. M. Barrett, for appellant.

A. F. White, for appellees.

MITCHELL, J.—This was a suit by the Bass Foundry and Machine Works of the city of Fort Wayne against the board of commissioners of Parke county. The questions involved arise upon the ruling of the court in sustaining a demurrer to the plaintiff's amended complaint.

The facts upon which the action is predicated, as set forth in the complaint, are, in substance, as follows: Prior to the 11th day of December, 1883, the board of commissioners of Parke county, after having duly adopted plans and specifications and taken the other preliminary steps required by law in that behalf, advertised the letting of a contract and requested bids for the construction of a court-house and jail for Parke county. The contract was regularly let to William H. Myers, at a specified price, he having been the lowest responsible bidder, and having given bond as required by

law. The contract as finally executed provided, in case the work should be unreasonably delayed or abandoned by the contractor, that the board of commissioners should have the right to enter upon the work and procure such necessary labor and material as might be required to carry on and complete the contract, and charge the cost thereof to the contractor. After having entered upon the execution of his contract and partially completed the buildings, the contractor, Myers, abandoned the work and declared his inability to resume it. He had previously sublet the contract for the iron work to the plaintiff, having agreed to pay therefor $32,000, and he had also become indebted to it on that account, for work already done, in the sum of $10,000.

It is alleged in the complaint that, on the date above mentioned, the board of commissioners, pursuant to the right therein reserved, declared the contract with Myers forfeited on account of his previous abandonment of the work, and that the commissioners thereupon gave notice of their purpose to proceed to the completion of the work, and to charge the excess of the cost thereof over the contract-price to the contractor, and to hold him and his sureties liable therefor.

It is further alleged that the commissioners agreed with the plaintiff that in consideration that it would go on and complete the iron work for the court-house and jail, according to its contract with Myers, the board would become responsible for and pay the amount then due from the contractor, and to become due on the contract, and that, in pursuance of such agreement, the plaintiff had proceeded and performed work and furnished materials in the construction and completion of the court-house and jail so left uncompleted by the contractor, which work and materials it is alleged were reasonably worth the sum of $17,000.

It is averred that the board of commissioners accepted and approved the work, and took possession of the court-house and jail, and that they have ever since used and occupied them, and that although often requested so to do, the

board has failed and refused, and still fails and refuses, to pay the plaintiff. An itemized account is filed with the complaint.

Except as it may be inferred from the averment that the board had failed and refused to pay the plaintiff, it does not appear whether the claim had been filed with the auditor and presented to the board of commissioners and disallowed. The court sustained a demurrer to the complaint.

Two questions are presented by the rulings on the demurrer:

1. Assuming that the facts stated were otherwise sufficient, was it necessary, in order to make the complaint good and give the circuit court jurisdiction of the claim, that it should have been averred therein that the claim sued on had been filed with the county auditor and presented to the board of county commissioners and disallowed?

2. Is the board of commissioners of Parke county liable to the plaintiff for the work done and materials furnished in completing the court-house and jail, under the facts disclosed in the complaint?

It should be remarked that the causes of demurrer assigned were, that the complaint did not state facts sufficient to constitute a cause of action, and "that the circuit court has no original jurisdiction of said cause of action."

The statute regulating the filing and prosecution of claims against counties has undergone some comparatively recent modifications, which require to be briefly considered. Under the statute in force from May 6th, 1853, to May 31st, 1879, county commissioners were forbidden to allow any claim against the county unless the claimant should first file a detailed statement of the items and dates of charge, and, unless the truth of the charge was known to the commissioners, until such competent proof was adduced in favor of the claim as was required in other courts. Provision was made for taking an appeal from all decisions for allowances, except in certain specified cases, within thirty days, or, in case a claim

was disallowed in whole or in part, the claimant, instead of appealing, might, at his option, bring an action against the county. Sections 5761, 5763, R. S. 1881. While this statute remained in force the uniform holdings were, that a suit might be brought against the county in the circuit court, in the first instance, without presenting the claim to the county commissioners for their consideration. The rulings were distinctly to the effect that it was not necessary either to aver or prove that the claim sued on had been presented to the board of commissioners and disallowed before the commencement of the action, but that a claimant might present his claim to the board, and appeal in case it was disallowed in whole or in part, or that he might, at his option, commence suit against the county in the first instance. *Board, etc.,* v. *Ford,* 27 Ind. 17; *Board, etc.,* v. *Wright,* 22 Ind. 187; *Commissioners* v. *Holman,* 34 Ind. 256; *Jameson* v. *Board, etc.,* 64 Ind. 524.

In the absence of restrictive legislation, those cases correctly assume that the liability to be sued in a court of general common law jurisdiction, on matters arising out of contract, is one of the inherent attributes of a municipal corporation.

By the act which took effect May 31st, 1879, it was provided, in substance, that any person who should thereafter have a legal claim against any county should file it with the county auditor, to be by him presented to the board of county commissioners. The commissioners were required to examine into the merits of the claim, and in their discretion allow it in whole or in part as they might find it just and owing. An appeal was allowed to the circuit court to any person feeling himself aggrieved by any decision of the board. Sections 5758, 5759, 5769, R. S. 1881.

The fourth section of the act of 1879 (section 5760, R. S. 1881), reads as follows: "No court shall have original jurisdiction of any claim against any county in this State, in any manner, except as provided for in this act."

It was uniformly held that the above mentioned act repealed section 5771, R. S. 1881, being section 10 of the act of 1852, by implication, in so far as that section allowed the bringing of an independent action against a county at the option of a claimant whose claim had been disallowed by the board of commissioners, and that the effect of section 4 of the act of 1879 was to deprive all the courts of the State, except boards of county commissioners, of original jurisdiction of claims against counties. *State, ex rel.,* v. *Board, etc.,* 101 Ind. 69; *Board, etc.,* v. *Maxwell,* 101 Ind. 268; *Pfaff* v. *State, ex rel.,* 94 Ind. 529; *Board, etc.,* v. *Hon,* 87 Ind. 356.

By an act approved March 9th, 1885, section 3 of the act of 1879 (section 5769, R. S. 1881) was amended by substantially re-enacting that section and sections 9 and 10 (sections 5770, 5771, R. S. 1881) of the act of 1852. This amendment necessarily restored the statute, with the interpretation which it had received by this court, as it was prior to the act of 1879, unless section 5760, which provided that no court except boards of commissioners should have original jurisdiction of any claim against a county, remained in force after the re-enactment of section 5771, in the amendment of 1885. The re-enactment of this last section certainly restored the right to bring an original action against the county in case the board of commissioners disallowed a claim in whole or in part. Did it restore the right to bring the action without first presenting the claim to the board, and did it revive the right of the circuit court to entertain original jurisdiction of such a claim before the claim had first been presented to and disallowed by the board of commissioners?

After a good deal of hesitation we are constrained to the conclusion, that the purpose of the act as it now stands was to require claims against counties to be first presented to the respective boards of commissioners before bringing suit. This is to the end that a county shall not be involved in litigation which might be avoided by affording it the opportu-

nity to discharge its legal obligations without the expense of a suit.

The original jurisdiction of the circuit court is still subject to the provisions of the act of 1879 and the amendment thereof in 1885.

The question still remains, should the demurrer have been sustained to the complaint in the present case because of the absence of an averment therein that the claim had been presented to the board of commissioners and disallowed? The first ground of demurrer, that the complaint does not state facts sufficient, presents no question concerning the jurisdiction of the court. *Whitewater R. R. Co.* v. *Bridgett*, 94 Ind. 216.

Waiving the question made concerning the informality of the second ground of demurrer assigned, our conclusion is that the complaint is good against a demurrer thereto, in whatever form it may have been drawn.

Section 339, R. S. 1881, enacts that " The defendant may demur to the complaint when it appears upon the face thereof, either: *First.* That the court has no jurisdiction of the person of the defendant or the subject of the action." The rule is universal as applied to courts of general jurisdiction, and especially in matters which proceed according to the course of the common law, that the facts which give the court jurisdiction of the subject of the action need not affirmatively appear on the face of the complaint. *Kinnaman* v *Kinnaman*, 71 Ind. 417, and cases there cited ; 1 Works Pr., section 474.

It follows from the very language of the statute which prescribes the causes of demurrer, as well as from the general rules of the common law, that a demurrer for want of jurisdiction, either in respect to the person of the defendant or of the subject-matter of the action, will only lie when the defect appears upon the face of the complaint. The difference between want of jurisdiction because the court is wholly without power or authority to take cognizance of

and adjudicate upon the particular subject-matter involved in the suit, and want of jurisdiction on account of the non-existence of some extraneous fact which may or may not exist in that case, is not to be disregarded. Where the court is, in law, incompetent, and without the faculty to deal with the subject-matter before it, its proceedings and judgment, without regard to any question of waiver or consent by the parties, would be *coram non judice.* In such a case the want of jurisdiction would necessarily appear upon the face of the complaint, and objection might be taken by demurrer or motion to dismiss. Where, however, the subject-matter before the court is within its ordinary jurisdiction, so that its judgment would be binding unless the facts going to defeat its jurisdiction in that particular case were brought forward, a court of general jurisdiction may proceed until the facts showing want of jurisdiction are made affirmatively to appear. This is so because the parties may, in such a case, waive any question concerning the jurisdiction of the court. Where facts exist which would deprive the court of jurisdiction, or arrest the proceedings for the time being, the complaint being silent in that regard, objection can not be taken by demurrer, but the facts must be brought forward by answer or plea. If no objection be thus taken, the defect is to be deemed waived.

As has already been seen, under the act of 1885 courts were reinvested with original common law jurisdiction in respect to suits against counties. That act brought the subject-matter generally within the power and authority of the court. In other words, it restored the competency of the court, and gave it the power to take original jurisdiction of and to adjudicate upon the subject-matter of claims against counties. It is necessary that certain precedent facts, viz., the presentation of the claim to the board of commissioners, should have occurred before the jurisdiction of the court becomes perfect and unavoidable, precisely as it is necessary in

order to give the court jurisdiction to contest the validity of a will that the testator must have died in, or left assets in, or that assets of the estate must have come into, the county where the contest is being carried on. *Kinnaman* v. *Kinnaman, supra; Thomas* v. *Wood,* 61 Ind. 132. In cases of the latter class, and all others analogous thereto, it has been uniformly ruled that the complaint need not show the jurisdictional facts upon its face. Of course the rule is different in respect to courts of inferior or limited jurisdiction, or where a court of general jurisdiction is exercising a mere statutory power and is not exercising a jurisdiction which was according to the course of the common law.

We are thus led to the conclusion that it was not necessary that the complaint should have shown upon its face that the claim sued on had been filed with the auditor of Parke county, and that it had been presented to the board of commissioners and disallowed, prior to the commencement of the action.

It is argued next that the demurrer was properly sustained, because, in any event, the county is not liable to the plaintiff upon the facts disclosed in the complaint. This argument proceeds upon the assumption that the action of the board of commissioners of Parke county in taking possession of the uncompleted work upon the failure of the contractor, and their agreement with the plaintiff to pay in case it proceeded to furnish and complete the iron work for the court-house and jail, was *ultra vires* and void. This result is said to follow because the statute prohibits county commissioners from letting any contract for the construction of any court-house, jail or other county building, the cost of which exceeds the sum of five hundred dollars, without first adopting plans and specifications, and giving public notice and requesting bids as provided in sections 4243, 4244, 4245, R. S. 1881.

The provisions of the statute referred to apply manifestly to the original contract for the construction of the buildings therein enumerated and referred to.

After a contract has been let in compliance with the pro-

visions of the statute, and the work has been entered upon, whether the commissioners may, upon the default of the contractor, proceed by the employment of such agencies as are available and complete the building, must depend to some extent at least upon the circumstances of each particular case. In the event that a contractor should abandon his contract when the work is at such an incipient stage as that to complete it would amount practically to the construction of a court-house by county commissioners, without regard to the contract previously let, it might be a question whether contracts made by them for labor and materials would be binding as such upon the county.  On the other hand, if, after the contract had been regularly let, the contractor had carried the work forward to such a state as that in the judgment of the commissioners the building could be completed substantially under the contract, by carrying forward and keeping in operation the agencies and forces already in motion, we can see no reason why that course may not be within the incidental power of the commissioners.

The statute (section 5748) makes it the duty of the board of commissioners of each county to construct and furnish a court-house, jail and other necessary public buildings for the use of the county, and to keep them in repair.  It requires that plans and specifications be adopted, and that the contract for the building be let in pursuance of certain formalities. The statute makes no provision for such a contingency as has happened in the present case, yet it is within the experience of all that such contingencies are likely to happen in the construction of public as well as private buildings.

It would hardly do to assume that the Legislature failed to consider that such a contingency might happen, or that it was intended in case it did happen, at whatever stage of the work, that the hands of the county commissioners should be tied until new plans and specifications were adopted and a new contract let.  In the absence of any provision in the statute for such a case, we must assume that it was intended

that the commissioners should exercise their best discretion in each case, according to the circumstances that should exist at the time.

Whatever may be said about the binding force and effect of contracts made by commissioners under the circumstances disclosed, certainly, where a county board, in pursuance of its duty to erect public buildings for the county, has proceeded regularly to a point where a contractor abandons the work while it is in progress, and then, in the exercise of its discretion, procures others to furnish money, labor and materials, so as to carry the work forward to completion, the county can not, after accepting and enjoying the buildings thus completed, refuse to repay the money and the reasonable value of the labor and materials furnished at the request of the commissioners. The doctrine of *ultra vires* does not absolve municipal corporations from the principles of common honesty.

When a corporation has received the money or property of an individual, under color of authority, and has appropriated it to its necessary and beneficial use, it will not be heard to assert its want of power to pay the value of what it has received and still retains.

In such a case, where the iniatory steps have been taken which authorize a municipality to proceed with a public work, persons who furnish money, labor or materials to the municipality, which are actually used in the work and retained by it, become equitably entitled to recover. *Bicknell* v. *Widner School Tp.*, 73 Ind. 501, and cases cited; *Wallis* v. *Johnson School Tp.*, 75 Ind. 368 ; *First National Bank* v. *Union School Tp.*, 75 Ind. 361; *Pine Civil Tp.* v. *Huber Manfg. Co.*, 83 Ind. 121; *Sheffield School Tp.* v. *Andress*, 56 Ind. 157; 1 Dill. Munic. Corp., section 464, and note.

It appears from the facts disclosed in the present case that the appellants had taken a sub-contract to furnish the contractor with the iron work for the court-house and jail at a specified price; that it had proceeded so far that the con-

tractor had become indebted to it in the sum of $10,000. The commissioners agreed that if it would proceed and complete the iron work according to its contract with Myers, the county would pay the amount due from the contractor, as well as that to become due for the work not yet completed. The commissioners had no power to assume an indebtedness due the appellant from the contractor, and so far its contract can not be enforced, nor has the county come under any equitable obligation to pay the amount due for work done for the contractor. But, in respect to work actually furnished for the county, at the request of the commissioners, the county is at the least liable to pay the actual and reasonable value of the labor and materials furnished, and for the money expended in constructing public buildings which the county has accepted and which it is using and enjoying. These conclusions lead to a reversal of the judgment.

Judgment reversed, with costs.

