DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

OF THE

## STATE OF NEW JERSEY

NOVEMBER TERM, 1919.

CHARLES IPPOLITO, APPELLANT, v. BOROUGH OF RIDGE-
FIELD, BERGEN COUNTY, NEW JERSEY, RESPOND-
ENT.

Argued November 19, 1919—Decided March 8, 1920.

1. In moving for a nonsuit counsel should state specifically the
grounds upon which the motion is rested: but the arguments
thereon should not be taken down by the stenographer and should
not be returned with the record or printed. The trial judge
should, however, state his reasons for granting or refusing a non-
suit and they should be taken down and returned with the record,
because counsel for the defeated party is entitled to know the
reasons upon which the judge's determination is rested, so that
he may the better answer them in the court above, in case of ap-
peal, and the appellate court is entitled to be informed of the
grounds of the decision which it is required to review.

2. Respondent advertised for proposals for lump sum bids for a
sewage disposal plant complete, as per plans and specifications,
and also unit price bids for contingent extras, work for which
unit prices were not provided to be done for actual cost, plus fif-
teen per cent. Appellant was the lowest bidder. He was awarded
the contract. While he was in the midst of the work, and the
foundation which had been called for originally was nearly com-
pleted, the borough decided it to be unsafe to bear the burden
proposed to be placed on it, and passed a resolution that the con-

tractor be authorized and required to do certain work for which no unit prices were provided, the total cost of which proved to be far in excess of $500. · After this work was practically completed the borough stopped all work and ordered the contractor off the job. *Held*, that there is nothing in chapter 342, *Pamph. L.* 1912, *p.* 593 (which provides that whenever it shall be lawful for a public body to let contracts for doing work or furnishing materials or labor, where the sum to be expended exceeds $500, the action of such public body in entering into any such contract shall be invalid unless there shall first be public advertising for bids and award made to the lowest bidder), which forbids a call for unit prices for contingent extras, and the doing of other work for which unit prices are not provided, for cost, plus fifteen per cent. The insertion of such provisions in a contract is a protective measure to the public in the event of modification of the work occasioned by an unforeseen emergency, or as an incident to the work provided for in the original contract; and the given municipality is always protected, because whether this is so, or whether the extra work is the result of an effort to evade the statute, are questions for the jury.

On appeal from the Bergen County Circuit Court.

For the appellant, *Howe & Davis* and *Edward M. Colie.*

For the respondent, *William J. Morrison, Jr.*

The opinion of the court was delivered by

WALKER, CHANCELLOR. This appeal brings up for review the action of the Bergen County Circuit Court in granting defendant a nonsuit on counts 2, 3, 4, 5 and 6 of the complaint. At the close of the plaintiff's case counsel for the defendant moved to strike out a large part of the testimony and made what he said would be in effect a motion for a nonsuit. This was addressed to all six of the counts in the complaint. The court overruled the motion as to the first count, and, declining to strike out the testimony, turned the motion into one for a nonsuit and granted it as to the last five counts. The case was then submitted to the jury on the first count, who returned a verdict for plaintiff. A money judgment was thereupon entered in favor of the plaintiff and against the defendant for the sum found due by the jury, with judg-

ment against the plaintiff on the nonsuit. The plaintiff has appealed to this court from the judgment of nonsuit against him. The colloquy between court and counsel on the motion to strike out evidence, turned into a motion for nonsuit, is reported *verbatim* and covers some fifteen printed pages of the state of the case. This is not in accord with approved practice. In moving for a nonsuit, counsel should state specifically the grounds upon which the motion is rested; but the arguments thereon should not be taken down by the stenographer, and should not be returned with the record or printed. *Koch* v. *Costello,* 93 *N. J. L.* 367. The trial judge gave no reasons for his action in granting the nonsuit. This also is not in accord with approved practice. While the arguments of counsel on a motion to nonsuit should not be taken down, the judge's deliverance in granting or refusing it, should be, as counsel for the defeated party is entitled to know the reasons upon which the judge's determination is rested, so that he may the better answer them in the court above, in case of appeal, and, besides, the appellate court is entitled to be informed of the grounds of the decision which it is required to review.

The respondent received competitive bids after due advertisement for constructing a sewage disposal plant. The form of proposal required lump sum bids for the disposal plant complete, as per plans and specifications, and also unit price bids for contingent extras, if required in the construction of the plant, work on which no unit prices were bid to be done for actual cost plus fifteen per cent. Appellant bid $10,300 for the sewage disposal plant, complete, unit prices for contingent extras, and work on which no unit prices were bid for cost plus fifteen per cent. His bid was accepted and a contract between him and the borough was executed in accordance therewith. The plans and specifications described the plant as made up of a settling tank of the Imhoff type, supported on a double circle of piles, the inner circle to support the upper section of the tank; sludge drying beds formed of steam cinders compacted by ramming and sealed with clay, and the necessary piping to convey the sewage from

the settling tank to the sludge beds, and to convey the effluent into an adjacent creek.

Before the plant was completed, defendant stopped the work. The first count of the complaint is upon this breach of contract, for the value of his work, labor and materials done and performed under the original contract, and for plaintiff's profit on the work not done, and on this count he had a judgment, from which no appeal has been taken. As to count No. 2. While the contractor was in the midst of the work, and the foundation which had been called for originally was nearly completed, the borough decided it to be unsafe to bear the burden proposed to be placed on it, and passed a formal resolution that the contractor be authorized and required to do certain work for which no unit prices were provided in the bid and proposal made by him, at a cost which proved to be far in excess of $500. After this work was practically finished the borough became doubtful as to whether it wanted to complete the Imhoff system, and called in an additional engineer who investigated the subject and stopped all work, and the contractor was subsequently ordered off the job.

It is true that by the statute (chapter 342, *Pamph. L.* 1912, *p.* 593), it is provided that whenever it shall be lawful for a public body to let contracts for doing work or furnishing materials or labor, where the sum to be expended exceeds the sum of $500, the action of such public body in entering into any such contract shall be invalid unless there shall first be public advertising for bids and the award made to the lowest responsible bidder. In this case the contract, as already remarked, was let after advertising, and it contained a provision for what were called contingent extras, and pay for all work for which unit prices were not provided, at actual cost plus fifteen per cent. The original lump sum contract price was $10,300, and it is true that the cost of the extra work for which unit prices were not provided, plus fifteen per cent., amounted to $13,358.75, a sum considerably in excess of the original contract price.

The defence was not fraud but *ultra vires*. It is not disputed that the plaintiff's bid was the lowest under the notice, proposal and specifications, all constituting part of the contract, and all prepared by the borough. But it is claimed that the provision for payment on the basis of cost plus fifteen per cent., as to work not covered by the original plans and specifications, and the "contingent extras," made the bidding non-competitive and the entire contract void. These provisions in and of themselves do not avoid the contract.

In *Browning* v. *Freeholders of Bergen,* 79 N. J. L. 494, it was held in this court (at p. 497) :

"While there is nothing in the statute that expressly authorizes a call for these unit prices, the demand for them, as a protective measure to the public in the event of modification of the work to be done by the contractor, is entirely unobjectionable. Clearly this was the only purpose for such a demand as expressed in the present proposal. The competitive feature of the proposal was the bids (called in the proposal 'lump sum' bids) which each bidder was required to make for the completion of the entire work according to the plans and specifications exhibited to all alike; the call for unit prices, on the other hand, was a protective measure in view of possible demands that might be made upon the successful bidder when he should have become the contractor, for modification, in the details of the contract, presumably not yet determined upon by the board, and certainly not disclosed to the bidders, or to all of them alike."

*City of Chicago* v. *McKechney,* 91 Ill. App. 442, was a suit by contractors for compensation for extra work under an agreement for constructing a tunnel in the city of Chicago. They had a verdict and the city appealed. The judgment was affirmed. The agreement contained a provision that when the tunnel was partly in earth and partly in rock an additional price per cubic foot for rock excavation above the unit price per lineal foot of earth would be allowed. There were disputes between the parties including extra allowances for rock excavation, and all work on the contract was suspended. The contract had been let under a statute which

provided that all contracts for the making of any public improvements, when the expense thereof exceeded $500, should be let to the lowest responsible bidder, after advertising. There was also a provision that such contracts could be let, without advertising for bids, by a vote of two-thirds of all the aldermen; and a supplemental contract was entered into between the parties by such a vote, which fixed the amount to be paid for rock excavation; but we are here concerned only with the alleged *ultra vires* of the original contract on which there was competitive bidding. The court said that material was classified as rock by the parties themselves, acquiesced in by both; and it was, under the evidence, a legitimate classification, entitling the contractors to additional price, unless, as contended by the city, its officers had no power to fix or agree to pay it by the original contract, without first readvertising for bids therefor and reletting to a new lowest bidder; and the court observed (at *p.* 458) :

"To have readvertised and let the new contract, the work having been partly finished, and new conditions arising for which the contractors were not responsible, would have been impracticable. It would have involved a practical abandonment of the contract, exposed the city to payment of damages, created confusion, litigation and delay. The emergency which had arisen was incidental to the prosecution of the work. The new material encountered called 'conglomerate,' might not continue for a long distance. It might be avoided by other changes in the grade or direction of the tunnel, which the commissioner of public works had power to make. The arrangement was not a new contract for new work within the meaning of the statute to cost more than $500. It was an agreement to pay a certain extra sum per cubic yard for excavation and extra masonry so long as the tunnel should continue in that particular material, which was apparently uncertain. If the price proved too high or the expenditure proved excessive, the city should have interposed, if it believed the arrangement improper. But instead of so doing, the city council expressly authorized the payments to be continued, indicating, at least, that it did not regard the

price as excessive. * * * It is true the extra payment to which the contractors became entitled under the allowance made by the city's representative, amounted in the aggregate to a large amount. But it is not shown to be more than the work was reasonably worth, nor is there any suggestion of fraud or dishonesty in making the agreement. There is no intimation that it was made with any other than honest motives."

We think the doctrine of the McKechney case is particularly apposite to the facts in the case at bar, and that it should be applied.

It is urged by respondent that a construction of the statute that competition is not required as to labor and materials, added by way of extras and called for in cases of emergency, would, in effect, be an amendment of the act—a matter permitted to the legislature only. This contention is well answered by the Supreme Court of Indiana in construing a similar statute in *Board of Com'rs* v. *Gibson,* 158 *Ind.* 471, where it is observed (at *p.* 478):

"The statute referred to was intended as a safeguard of the public interest, and we are disposed to enforce it according to its spirit. We do not think, however, that it was intended to apply to a case like this, where a sudden and unforeseen emergency confronts a board of commissioners after it has regularly let a contract for a public building, and where it is to be desired to avoid delay, and not to put a new contractor on the work, but to have the work continued by the general contractor for the construction of the building. In such a case, where it can be said that the new work is but an incident of a work before regularly contracted for, and where it does not appear that the act of the parties was a mere effort to evade the statute, we do not think that the statute is applicable. As said by this court in *Bass, etc., Works* v. *Board, etc.,* 115 *Ind.* 234, 243, 'The statute makes no provision for such a contingency as has happened in the present case, yet it is within the experience of all that such contingencies are likely to happen in the construction of public as well as private buildings. It would hardly do to assume

that the legislature failed to consider that such a contingency might happen, or that it was intended in case it did happen, at whatever stage of the work, that the hands of the county commissioners should be tied until new plans and specifications were adopted and a new contract let.    In the absence of any provision in the statute for such a case, we must assume that it was intended that the commissioners should exercise their best discretion in each case, according to the circumstances that should exist at the time.' "

The municipality is always protected, because whether the new work was occasioned by an unforeseen emergency or was but an incident of that provided for in the original contract, or was a mere effort to evade the statute, are questions for the jury.    The nonsuit on this count was erroneous.

As to count No. 3.    The claim under this count is for the difference between the agreed price for additional work done on the sludge bed of $1,844.19, less the admitted payments on account, $1,567.56, or $276.63.    This was for work not covered by the original plans and specifications.    As work progressed under the contract, it was found that part of the area upon which the sludge beds were to be built was quicksand and would not support the beds if made of rammed cinders sealed with clay, as originally planned, and the construction was changed to re-enforced concrete supported by concrete piers.    This change was ordered by the respondent. This work was done under contingent extras for concrete not shown on drawings, a provision contained in the contract. The reasons applying to count No. 2 apply also to this one, and the question of liability under the contract was one of fact for the jury, and not of law for the court.

As to count No. 4.    This raises a different question than that in counts 2, 3, 5 and 6.    It is a claim by the plaintiff for the value of materials belonging to him, not incorporated in the work.    The borough notified the plaintiff to stop work and give a list of all materials he had on hand, which might be utilized if a suggested modification of the disposal plant were carried out.    The plaintiff furnished such a list, with the value of the goods.    The borough took possession of all

materials and used some of them, sold some, and turned the proceeds into its treasury. The answer admits appropriating plaintiff's property, but denies it was of the value pleaded by him. The defendant cites no authority to justify this apparent unjustifiable seizure and conversion of the plaintiff's goods.

In *City of Elgin* v. *Joslyn*, 136 *Ill.* 525, where a contractor who had undertaken to construct water works for a city, quit and left in the hands of the city certain machinery, tools and materials, the last of which were used by the city in completing, and the tools and machinery were destroyed in finishing, the work, it was held that the city was liable to the contractor for the value of the materials used and tools and machinery destroyed. This is the law here as well as there, and the plaintiff was entitled to go to the jury as to the *quantum* of his damages.

As to count No. 5. The claim made is for damages to the contractor for delays caused by acts of the borough. The contract provided that the engineer should have the right to decide where and at what time each part of the work should be undertaken and continued, provided he enabled the contractor to keep his working force fully employed. The engineer ordered work stopped on the job twice, the first time sixteen days, and the second, twenty-three days. The contractor kept his force and plant at the job, and the amount of expense was shown in the testimony. There was testimony that he had his force ready to go to work at any time, and as under the terms of the contract he should have been enabled to keep his force fully employed, the question whether he could recover in this instance was for the jury, and the nonsuit was erroneous.

As to count No. 6. Notice was served on the contractor to stop work, which he did, and later he was ordered to take his plant off the job. During the time the plant was idle, expenses were incurred in maintaining it and the force on the job. When about to remove his plant, the engineer directed the contractor not to do so, and stated that work would shortly proceed. Becoming satisfied that the borough did not

intend to go on, he removed his plant and rendered bills for the cost of maintaining it on the ground. He was required to follow the orders of the borough engineer and it was a jury question, under the evidence, as to whether or not he was entitled to pay for maintaining his plant on the work while kept there at the direction of the borough engineer. The nonsuit on this count was erroneous.

Let the judgment of nonsuit be reversed to the end that a *venire de novo* may issue.

*For affirmançe*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, WHITE, HEPPENHEIMER, WILLIAMS, TAYLOR, GARDNER, ACKERSON, JJ. 15.