Chief Justice Marshall
delivered the opinion of the Court.
Jones employed Woodbury, a carpenter, to build for him a framed house, the different apartments and dimensions of which were exhibited in a ground plan, and Woodbury agreed to perform the work for the price of $600 or $650, to be paid by the conveyance of a certain lot in the town of Paducah, estimated at the value of $800, the excess to be accounted for in carpenter’s work. This agreement was verbal only. Whether there was or was not a memorandum at the foot of this, ground plan, indicating that the work was to be done in a neat, plain, workmanlike manner, this might be implied as a term of the agreement from the size of the house and the price to be paid, if nothing to the contrary appeared. The house was in fact erected and finished by Woodbury with much costly work, and he claims in this action of assumpsit upwards of three thousand dollars, and has obtained a verdict and judgment for more than that sum, as the value of his work and materials.
Such an extraordinary excess above the contract, can only be justified by the fact, to be established with reasonable certainty, 1st: That in the execution of the work, there were corresponding departures from the original design, either in the plan and dimensions of the house, and the quantity of materials and labor, or in the quality of the materials and finish or style of work, or in some or all of these particulars; and 2d: That these departures were directed by the employer, or assented to by him understandingly, with a knowledge or at least with reason to believe that they would greatly *168 increase the cost of the building to him. When the builder has undertaken the erection of a house for another for a specified price, without specification as to the manner or style of the work, it is his duty when he proposes to do any part of it in a more costly style than would be justified by the agreed price, to apprize the employer of the difference in the cost. The employer may not know, and is not presumed to know the gradations of price pertaining to the different modes or style of finish. He relies," and has aright to rely upon the undertaker of the work for information on this subject. And the latter, having undertaken to complete the house for a fixed price, cannot increase it ad libitum, merely on the ground that he was allowed to proceed with and complete the work according to his own judgment or taste, or that certain modes of work proposed by him, pleased the fancy and met the approbation of the employer. Prima facie, the employer has a right to suppose, unless apprized of the contrary, that every proposition as to different portions of the work, is made under the contract for the whole, and is intended merely to present to him a choice of modes within that contract. And to get rid of this inference, the undertaker must show either that he apprized the employer that his proposition was a departure from the original design and contract, and would be attended with increased cost, or that it was of such a character as necessarily to carry this information to him. And as to costly work done in -his absence and in a manner not previously approved by him, it is not sufficient to show that upon his return he was pleased with its appearance, and did not order it to be removed or pulled down.
The general rule in respect to building under a special contract at a fixed price is, that so far as the work has been done under the contract, the prices agreed on are to govern, & for extra work not provided for in the contract, and reported to or suggested by the employer rhe rate of charge should not exceed the prices fixed in the special contract.
*168 The general principle applicable to the case of a special contract for erecting a house, when in the progress of the work there have been alterations or additions not originally contemplated nor expressly provided for, seems to be that as far as the work can be traced under the original contract, it shall be paid for under .that contract, and that the residue which cannot *169 be brought within the contract shall be- paid for as if there were no contract. But the safety of employers, and the good faith proper to be observed in all cases, requires that this rule should be so applied as not to violate the principles above stated; and they seem to indicate further,- that extra work either in quantity or quality, unless done under an express agreement, or at least a statement of the price, should not be charged for at a greater rate in reference to the measure and value price of such work, than the contract price bears to the measure and value price of the work contracted to be done.' So that if the contract price was a fourth or a fifth less than the price estimated by measure and value, the extra work should not be estimated at more than three-fourths or four-fifths of its price according to measure and value.
The plaintiff in this case claims, as we understand his position, that there was by the assent or acquiesence of the defendant, or by the mutual assent of both parties, a total departure from the original plan and contract, which authorizes him to claim and recover for the entire work, without reference to the contract price. He does not, it is true, expressly assert this proposition in the instruction asked for by him. But he assumes it in the declaration, and evidently attempts to maintain it by his evidence, and in the argument presented in support of the judgment. And we do not perceive how the verdict as to its amount, can be sustained on any other principle ' than that of allowing for the work without reference to the contract price.
The principal witness for the plaintiff,-who was employed as his foreman in erecting the house, and professes to be “an architect,” and says that none but an “architect” can understand the merits and value of the work done, referring to its earliest stage and certainly to a period when no extra work was done, states that the ground plan being before the parties, he was requested to draw a front view of the house, not depart *170 ing from the ground plan on which, he says, was written, in the hand-writing of the defendant, the statement that the work was to be done in a neat, plain, and workman-like manner — that he accordingly drew a front view, preserving the dimensions of the ground plan — ■ that the plaintiff exhibited this drawing to the defendant, as presenting “ the front view of his house,” without any intimation that it was a departure from the original plan or contract, or would require an increased ' expenditure, and that the defendant was much pleased with it.
This drawing presents a very handsome front, and was, as we understand, substantially followed, though perhaps, with some additional ornaments in the erection and completion of the building. But we cannot say, from the copy of it which accompanies the record, that it furnishes any information or definite idea as to the precise nature of the workmanship, or as to the cost, or that its approbation by the defendant necessarily implied that he intended, or was willing to give up his original contract, in order to have such a house as was represented in this drawing, without regard to the cost.
The witness seemed to consider the approbation or adoption of this drawing as the plan for the front of the house, as a total departure from the original plan, in the style and manner of workmanship, and said that the presentation of it as the front view of the house5 under the circumstances above stated, did not imply the intention or impose an obligation on the part of the undertaker, to construct the house according to this plan at the contract price, and that he knew of no custom among carpenters to that effect. One or two other witnesses concurred with him as to not knowing of such a custom. But several of the defendant’s witnesses deposed that they understood such to be the custom. And the defendant’s counsel asked for an instruction to the effect that if the jury believed the front view was presented to the defendant under the circumstances *171 above stated, and that there was such a custom as stated by the defendant’s witnesses, the law presumed the intention and understanding of the parties to have been in accordance with such custom. Which instruction the Court refused to give. And this refusal is complained of as erroneous.
The inference should be, when the undertaker of a house presents to his'employer the draft of the house which he has contracted to build at a fixed price, that it is in accordance with the original plan — good faith requires that it should have been so drafted.
Independently of any custom on the subject, reason and good faith indicate the inference as matter of fact, that when the undertaker • of a house by special contract, presents to his employer a drawing of his house, without intimating that it differs from the one which he expected and intended to build under the contract, the employer has a right to infer that it presents the plan of his house, as it .is to be built under the contract, unless there be some circumstance in the plan itself, or attending its presentation, by which he is or should be clearly apprized that this is not to be expected. The existence of a custom in conformity with this natural and just inference, might raise it to the dignity of a presumption of law. But the instruction, in the form in which it was asked, and without qualification, would have excluded from the jury the enquiry whether by by the plan itself, or some other circumstance, the defendant was not apprized that a house built according to that plan, must cost more than the contract price— and whether, in fact, he did not approve pr adopt the plan with that expectation. It might also have prevented the jury from giving due weight'to subsequent facts or acts of the defendant, tending to prove that he was aware, in the progress of the work, that there Was a departure from the original design and estimate, which must considerably enhance the cost, and that with this knowledge, he approved of or directed these departures, and therefore should, to that extent, be bound to pay their reasonable value. We cannot say, therefore, that the Court erred in refusing this instruction, as asked. The law requires and intends to enforce good faith on both sides in such a transaction ; and will no more hold the builder to the contract price, *172 when by the authority or consent of the employer he has made alterations or additions which the latter knew would greatly increase the cost, than it will hold the employer to the full “measure and value price” for such departures from the plan originally contemplated, as he may have been drawn into the approval of, without knowing that they were departures, or without knowing that they would add materially to the cost. It was not necessary, however, that he should have actually or expressly directed the departures from the original plan. If he knowingly and understanding^ assented to or approved them when proposed, and thus caused additional expense and labor, not comprised in the original design and estimate, he made himself justly liable to pay an additional price therefor. And on this ground, the first instruction asked for by the defendant, requiring that the additions and alterations should have been directed by him, was propeidy refused.
To' authorize a jury to give damages for extra ■work alleged to be done upon a building where the whole was to be done at a fixed price, it shu’d clearly appear that the employed knew that the work was extra work not embraced in the original understanding, and assented to by him be» fore done.
But on the other hand, it is not sufficient that he approved or assented to certain additions or alterations or departures proposed for his acceptance, and in some instances evidently with the design of captivating his fancy. He must, in order to make him liable on the ground of such approval or consent, have been apprised either by direct communication of the fact, or by the nature of the proposition, that the work proposed would be attended with increased cost to him. Applying then to the instruction given for the plaintiff the same rigid scrutiny that has justified the refusal of those asked for by the defendant, we are of opinion that the instruction given for the plaintiff is defective and misleading, and must be deemed erroneous in its application to the evidence, because in authorizing the jury to make the defendant liable for the reasonable or estimated value of additions and alterations or departures from the original design, on the ground of his consent thereto, it did not inform them that in order to make him thus liable, he must have known or had reasonable ground to believe that such departures would be at *173 tended with a material increase of expense and cost to him. And we are inclined to the opinion that the instruction is also misleading in the intimation that the jury might find that there had been á total departure from the original contract between the parties.
We might not be disposed to disturb the verdict if it rested merely upon the evidence, although the weight of the testimony as to the value of the work would seem to have required a greater reduction from the sum charged, and although it is far from being certain that the defendant either assented to every part of the costly work with which he is charged, or that when he did actually consent, his assent was fairly obtained or given .with such knowledge as should have been communicated by the other party. Under the actual circumstances of the case, it is perhaps impossible to do exact justice between the parties. The extreme claim of each though sustained by a principle which is true in its proper application, would if fully allowed, produce probable hardship and perhaps injustice - to the other. It is therefore the more important that a jury called on to determine the case between them, should be possessed not only of the general rule or principle which may suffice for ordinary cases, but also of those discriminations and qualifications by which it may be adapted to the attainment of justice in cases of greater complexity, when there may be equities on both sides which should not be disregarded. And being of opinion that the-instruction given for the plaintiff, failed to put the case before the jury on its true basis according to the principles herein expressed, we think that a new trial should be had, in which the jury may be specifically directed to enquire how far the work done may be traced to the original design or plan, to estimate its value to that extent in proportion to the original price agreed on, to charge in the same way for extra work done without the directions of the defendant, or his consent given with knowledge express or implied of the increased cost to him, and to make extra charges for such extra work *174 only, as was directed by him or assented to with such knowledge as above indicated, and before it was done. With such directions to guard them in making up their verdict they will probably be enabled to do substantial ■justice between the parties.
Crockett for plaintiff; Husbands for defendant.
■We perceive no other error in the trial, unless it be in the refusal to exclude the testimony of the witness Barbour, detailing a conversation with the plaintiff in the absence of the defendant, and which seems so far as we understand its tenor and object to have been incompetent evidence against him. This error if it be one would scarcely be deemed sufficient to cause a reversal of the judgment, as the evidence in question was of little importance and probably had no effect in producing the verdict.
But for the error above noticed in the instruction, the judgment is reversed, and the cause remanded for a new trial in conformity with the principles of this opinion.