## EPPERLY v. BAILEY.

Where a party has sold and delivered chattels, or performed labor for another, under a special contract which he has failed to complete, and such part performance has been a benefit to the party receiving it, which benefit he has retained after the expiration of the time for completing the contract, an action on the *quantum valebat* or *quantum meruit* may be supported for the chattels delivered or the work done.

In such a case, the defendant may prove, by way of recoupment, whatever

damages he has sustained by reason of the non-fulfillment of the special contract; or he may resort to a cross action to recover them.

Nov. Term, 1851.

EPPERLY v. BAILEY.

Wednesday, November 26.

ERROR to the *Wayne* Circuit Court.

PERKINS, J.—Assumpsit by *Bailey* against *Epperly*. The declaration contained a special, and the common counts. The special count was upon this instrument:

"Article of agreement made and entered into between *Joel Epperly* and *John Bailey*, both of the county of *Wayne*, in the state of *Indiana*, on this 11th day of *January*, 1847, witnesseth: That the said *John Bailey*, on his part, is to deliver, or cause to be delivered, on his account, unto the said *Joel Epperly*, at his pork-house in *Fairhaven, Butler* county, *Ohio*, sixty thousand pounds of good bulked meat, the hog round, and as much more as the said *Bailey* has on hand to spare, and also sixty barrels of lard, and as much more as the said *Bailey* may have to spare; the meat and lard to be delivered between this date and the first day of *March* next. In consideration and payment of which, the said *Joel Epperly*, on his part, is to pay the said *Bailey*, or order, the sum of three dollars and sixty-five cents for each one hundred pounds of meat, and six cents per pound for the lard, to be paid on the meat and lard as said *Bailey* delivers it, if said *Bailey* requires it; and full and entire payment to be made when the whole of the meat and lard is delivered according to the above agreement." (Signed by the parties).

The plaintiff, *Bailey*, alleged, in the special count, that he had delivered a part, and was ready and offered to deliver all, of the meat and lard, according to the contract, and had not been paid, &c.

*Epperly* pleaded non assumpsit to the whole declaration. The issue was tried by a jury who found a verdict for the plaintiff, and the Court rendered judgment on the verdict. It was proved that *Bailey* had delivered, and *Epperly* received and kept, a part, but not all, of the meat and lard stipulated for in the contract. The time for the completion of the delivery had passed before this suit was brought.

On the trial, the Court instructed the jury that "if the

plaintiff did not deliver the pork and lard according to the written agreement, or offer to do so, as alleged in the declaration, he cannot recover on the first count of the declaration, which is founded on the written contract. But, under the common counts, the plaintiff is entitled to recover the reasonable value of the pork and lard actually delivered by the plaintiff and received by the defendant, not, however, to exceed the price contracted to be paid." This instruction raises the only material question in the cause.

There are many cases, especially among the earlier ones, which lay down the general principle that where the contract is entire, as where *A.* agrees to do a certain thing for which *B.* is to make a certain compensation, the doing of the entire thing by *A.* is a condition precedent, and he has no remedy, in any form, until he has fully performed his part of the contract; but this principle being found to operate inequitably in many cases, exceptions to it have been established, and justly; and we think the general proposition may now be asserted, that where a party has sold and delivered chattels or performed labor for another, under a special contract, which, for any cause, he has failed to complete, and such part performance has been a benefit to the party receiving it, which benefit he retains after the time for the completion of the contract has expired, an action on the *quantum valebat*, or *quantum meruit*, may be supported (1); and the question of difficulty in each of these cases now, is, the amount of damages that may be recovered. This depends much upon the course pursued by the defendant on the trial. According to the leading *American* authorities, which differ on this point from some, at least, of the *English*, but which we prefer to follow, a defendant may show all the damages he has sustained by the non-completion of the special contract, in reduction of the amount to be recovered by the plaintiff for what he did do, or render, in part performance of such contract, instead of resorting to a cross action for such damages. Some of the *English* authorities hold that a cross action must be resorted to.

See *Mondel* v. *Steel*, 8 M. and W. 858. Preferring the rule of the *American* cases, we shall not stop to examine the *English*. The *American* cases, however, concede the right to the defendant of waiving his damages in defense of such action, and of resorting to a cross action at his election (2). It is very manifest, therefore, that the instruction to be given by the Court, in the cases under consideration, must vary according to the courses pursued by the defendant in such actions. If the defendant waives his damages and resorts to a cross action, then the instruction, as given in this case, that the plaintiff may recover the reasonable value of his work done or property delivered, not exceeding the contract price, will be correct. But should the defendant set up his damages in such suit, then the instruction should be, that the plaintiff recover the reasonable value, &c., after deducting all damages occasioned by his breach of the special contract. It will not be improper here to notice some of the cases upon this point.

*Shaw* v. *Badger* was this. *Bela Badger* sued *Robert Shaw* for goods sold and delivered, &c. He proved that he had sold to *Shaw* five head of cattle for 217 dollars. *Shaw* then offered to prove, in the defense, that, at the same time, and in the same contract, *Badger* also sold to him, to be delivered shortly after, thirty-four sheep, at four dollars ahead, which had not been delivered, but were, soon after said sale to *Shaw*, sold to another person, at four dollars and twenty-five cents a head; and the Supreme Court of *Pennsylvania* held that *Shaw* had a right to have deducted, in said suit, the damages he sustained in consequence of the breach of contract by *Badger*, in not delivering the sheep so purchased with the cattle. 12 S. and R. 275.

*Bomker* v. *Hoyt* is as follows: *Bomker* sued *Hoyt* and another, in assumpsit, for 410 bushels of corn sold and delivered. The defendant showed upon the trial, that the corn was delivered upon a special contract for the sale and delivery of 1,000 bushels, and that the plaintiff had failed to deliver, &c. The Court held that the plaintiff

could maintain his assumpsit for the value of the corn delivered, and that the defendants might reduce the plaintiff's claim, by showing any damages they sustained by the plaintiff's failure to fulfill his contract; and thus substantial justice be done without subjecting the defendants to the necessity of bringing a cross action. 18 Pick. 555.

The following is a late case in *New York*: *Rose* sued *Barber*, and declared on a special contract by which the plaintiff agreed to lay a quantity of stone wall and dig a ditch for the defendant, for the sum of 100 dollars; and also on the common counts. On the trial it appeared that the plaintiff agreed to build the wall and dig the ditch for 100 dollars, the work to be completed in a certain time; that the plaintiff commenced the work, but, failing to complete it by the stipulated time, the defendant told him to go on with the job, and he would turn in and help him, on being allowed pay for his services. The defendant did, with this understanding, assist the plaintiff to complete the work; and, in said suit, he offered to show, among other things, by way of *recoupment of damages*, that he had sustained loss by reason of the ditch not having been finished at the time specified in the original contract. The Supreme Court held, that he was entitled to do so. They say that, by said breach of the contract, " a cause of action had arisen in his favor, and he did not discharge it, nor agree that the plaintiff should go free, in consideration of doing in part what he had bound himself to do in whole;" and that " a waiver of time was not a waiver of damages;" and further, that "the defendant was entitled to recoupe the damages; or, if they had been large enough, he might have urged them" in bar of the plaintiff's entire claim. *Barber* v. *Rose*, 5 Hill's (N. Y.) R. 76.

*Britton* v. *Turner*, 6 N. H. R. 481, is the last case we will mention. It was assumpsit for work and labor. The declaration contained a count upon the *quantum meruit*, averring the labor to be worth 100 dollars. It was shown in defense that the work was done under a special contract, by which the plaintiff was to labor one year for the defend-

ant for 120 dollars, and that he left the defendant's service, without cause, before the end of the year. The Court held, in a very able and elaborate opinion, that the action was maintainable, but that the plaintiff, if the defendant saw fit to make the defense, would only be entitled to recover "the reasonable worth, or the amount of the advantage" the defendant received in the whole transaction. They say: "If a person makes a contract fairly, he is entitled to have it fully performed, and if it is not done, he is entitled to damages. He may maintain a suit to recover the amount of damage sustained by the non-performance. The benefit and advantage which the party takes by the labor, therefore, is the amount of value which he receives, if any, after deducting the amount of damage; and if he elects to put this in defense, he is entitled so to do, and the implied promise which the law will raise in such case, is to pay such amount of the stipulated price for the whole labor as remains, after deducting what it would cost to procure a completion of the residue of the service; and, also, any damage which has been sustained by reason of the non-fulfillment of the contract." " There may be instances, however, where the damage occasioned is much greater than the value of the labor performed, and if the party elects to permit himself to be charged for the value of the labor, without interposing the damages in defense, he is entitled to do so, and may have an action to recover his damages for the non-performance, whatever they may be" (3). Mr. *Sedgwick*, in his valuable work on the measure of damages, gives his approval to this, as he calls it, *New York* and *Massachusetts* doctrine of recoupment; p. 486.

In the case before us, the evidence is upon the record; and it shows that the defendant did not, in this suit, claim damages for the breach of the contract, and that he had brought a cross action. The instruction in the cause, as above set out, was, therefore, right. Whether the defendant may give evidence of his damages, in these cases, under the general issue, or whether he must put in a

Nov. Term, 1851.

special plea, or a notice of his intention to claim his damages, are not questions arising in this suit.

*Per Curiam.*—The judgment is affirmed with 1 *per cent.* damages and costs.

*J. B. Julian* and *J. S. Newman*, for the plaintiff.

*C. H. Test* and *J. Perry*, for the defendant.

(1) See *McKinney* v. *Springer, ante,* p. 59.—*Manville* v. *McCoy, post.* Contra *Hoagland* v. *Moore,* 2 Blackf. 167, *Swift* v. *Williams,* 2 Carter's Ind. R. 365. See, also, *Cranmer* v. *Graham,* 1 Blackf. 406.

(2) The R. S. 1852, allow the defendant to set up in his answer any counter-claim arising out of the transaction set forth in the complaint as the ground of the plaintiff's claims, or any of them, and if he omits to set it up when he has been personally summoned, he cannot afterwards maintain an action therefor, except at his own costs. The counter-claim is defined to be any matter arising out of, or connected with, the cause of action, which might be the subject of an action in favor of the defendant, or which would tend to reduce the plaintiff's claim or demand for damages. R. S. 1852, vol. 2, pp. 39, 41.

(3) The right to maintain an action under the circumstances stated in *Britton* v. *Turner,* cited in the text, is denied in *De Camp* v. *Stevens,* 4 Blackf. 24.