## The Board of Commissioners of Fulton County *v.* Gibson.

### [No. 19,459.   Filed May 14, 1902.]

Appeal and Error.—*Motions.*—*Record.*—A motion to make a complaint more specific is not a part of the record on appeal by order of court without a bill of exceptions, where it does not appear that the order of court was made on the motion of either party, and the motion was not spread on the order book as a part of the court's order.  *pp. 477, 478.*

Counties.—*Contracts.*—*Notice.*—*Ultra Vires.*—Where in the course of the construction of a court-house an unforeseen emergency confronted the board of commissioners, necessitating the construction of a subbasement, not provided for in the original contract, a contract entered into for the construction thereof is not *ultra vires* because of the failure of the board to comply with §§4243, 4244 R. S. 1881. *pp. 478–480.*

Assumpsit.—*Special Contract.*—*Counties.*—A complaint in general assumpsit against a county for extra work in the construction of a court-house is not bad because it discloses that there was a special contract therefor, especially where the alleged special contract merely fixed the maximum price. *pp. 480–484.*

Counties.—*Contract for Construction of Court-House.*—*Action for Bill of Extras.*—*Pleading.*—Where a complaint to recover for extra work and material in the construction of a court-house alleged that the work and material had been furnished in addition to what the contract required, and, that subsequent to the execution of the original contract, the board of commissioners had directed plaintiff to do such additional work and furnish such additional material, "at such reasonable and just expense as the performance of the work in a proper manner, both as to work and material used, would call for," an answer merely alleging the execution of the original contract between the parties, and making a copy of it an exhibit, does not state facts sufficient to bar the action. *pp. 484, 485.*

Board, etc., v. Gibson.

CONTRACTS.—*Construction by Parties.*—Where in a suit growing out of the building of a court-house for extras in the construction of a subbasement thereunder there is some doubt and uncertainty as to whether the extra work, or a part thereof, was included in the original contract, the construction placed upon the contract by the parties themselves is entitled to great weight by the court in interpreting the contract. *p. 485.*

COUNTIES.—*Action for Bill of Extras in Construction of Court-House.— Market Value.*—Where the contract for the construction of a court-house provided that the amount to be paid for extras should be based upon the same prices at which the contract was taken and agreed upon before commencing the additional work, and there was no agreement as to the amount that should be paid for extras, except that a maximum amount was fixed, and the contract was let for the entire building at an aggregate price, it was not error, in an action to recover for extras, to admit in evidence the market value of the extra material and labor furnished. *pp. 485–487.*

SAME.—*Construction of Court-House.—Action for Extra Work.—Assumpsit.*—The failure of a building contractor to procure the certificate of the architect as to the value of extra work, as required by the contract, cannot affect his right of recovery for extras in an action in assumpsit. *p. 487.*

CONTRACTS.— *Construction. — Counties. —Arbitration by One Party. —*A provision in a contract for the construction of a court-house that if any dispute shall arise as to the true construction of the contract, or as to what is extra work, the matter shall be determined by the architect and the board, and their decision shall be final and conclusive, is invalid, since the law will not permit a party making a contract to provide that he shall arbitrate his own cause, and that his decision shall be final. *pp. 487, 488.*

ASSUMPSIT.—*Extra Work in Constructing Court-House.*—An action in assumpsit for extra labor performed and material furnished in the construction of a court-house will not be defeated because of the alleged informality of the board meeting at which such matters were agreed to, where the individual members of the board actively engaged in superintending the work. *p. 488.*

TRIAL.—*Evidence.—Objection.—Offer to Prove.*—Available error cannot be predicated upon the action of the court in excluding offered testimony, where the offer to prove was not made until after the court had ruled on the objection to the question. *p. 488.*

APPEAL AND ERROR.—*Instructions.—Record.*—Where the instructions are brought into the record by marginal notations under §544 Burns 1901, without a bill of exceptions, an order book entry, set out in the transcript, showing that both parties requested the court to instruct the jury in writing, and that "the court thereupon instructs the said jury, which said instructions of the court are in writing, and are filed herein, and are in these words, to

wit," followed by the instructions, does not sufficiently show that all of the instructions given are in the record.    *pp. 489, 490.*

Appeal and Error.—*Instructions.—When Not All in Record.*—A cause will not be reversed because of the alleged error of the court in giving instructions and refusing certain instructions tendered, where it is not affirmatively shown that all of the instructions given are in the record.    *p. 490.*

From Kosciusko Circuit Court; *H. S. Biggs,* Judge.

Action by Jordan E. Gibson against the board of commissioners of Fulton county for extra work performed and material furnished in the construction of a court-house.    From a judgment for plaintiff, defendant appeals. *Affirmed.*

*G. W. Holman, R. C. Stephenson, E. Myers* and *J. D. Widaman,* for appellant.

*L. W. Royse, B. Shane, I. Conner, J. Rowley, W. C. Bailey* and *C. A. Cole,* for appellee.

Gillett, J.—The complaint in this action is in two paragraphs, both declaring on the *quantum meruit,* for extra work done and extra material furnished in and about the construction of a subbasement to a court-house, which said appellant caused to be built at Rochester, Indiana, for the county of Fulton.    While this is the first appeal of this particular action, yet the subject-matter of the controversy here involved has been twice before this court.    See *Myers v. Gibson,* 147 Ind. 452; *Myers v. Gibson,* 152 Ind. 500. The appellant, after taking the various preliminary steps required by statute for the building of a court-house, awarded a contract therefor to appellee at and for the price of $76,073.    The appellee sought by this action to recover the additional sum of $19,996.42.    He recovered a judgment below in the sum of $11,595.81, and from said judgment the appellant prosecutes this appeal.

According to the testimony of the appellee, after the execution of the original contract, and after he had torn down the old court-house, the board of commissioners and the architect proceeded to locate the new building, and fixed a

grade line for it. The natural surface of the ground on which the building was to stand was irregular, and it was higher on one side than on the other. After the fixing of the grade line, appellee proceeded to excavate the dirt for the trenches for the walls of the building. The depth of the exterior trenches, when completed, was three feet and ten inches below the grade line, and it was at that level, if the specific provisions of the plans and specifications had been followed, that the footings for the exterior walls should have been put in. Appellee then notified the members of the board of commissioners and the architect that the excavation was ready for their inspection. The lower surface of the ground in the trenches was, as appellee testified, "part of it loam, some of it hard-pan, some sand and gravel, varied at different points all around the building". He further testified upon this subject that "there would be a few feet of sand, and some hard-pan, and on the low side we would come around to sand or loam before we would strike the hard-pan". After examining the trenches, the architect said, in the presence of appellee and the members of the board: "This soil or ground is not of sufficient strength to maintain a building of this character, and I will not permit the building to be placed on that foundation. It will not resist the weight of the building". He then directed that the excavation be carried down to a solid and suitable foundation, and that twelve inches of concrete should be put in below the stone footings indicated in the plans. The board entered an order in its record, on the same day, as follows: "In relation to court-house foundations. The matter of the foundation under the proposed new court-house now being under consideration, and the board being fully advised as to insufficiency of the same at the present depth of excavation, and the architect having directed that a more secure foundation be made, it is hereby ordered that concrete footings be put under the walls of the building, the same to be one foot in thickness, and to project beyond the

face line of the present footings at least six inches on either side thereof; said concrete to be composed of one part Portland cement, two parts clean sharp sand, and two parts broken stone, and such excavations shall be made as are requisite and necessary to secure a firm and solid foundation." Appellee did not know that this order had been made until he was advised of it that afternoon, when all of the parties again met. After further consideration, it was suggested by one of the members of the board that, in view of the fact that the foundation would have to be put down much deeper, it would cost but little more to make a subbasement, to put the steam pipes, etc., in, and save the basement rooms for offices. The members of the board asked the architect for an estimate of the cost of the change, but he said that he could not make it at that time. Then they asked the appellee to make an estimate. After making some borings, to ascertain the character of the soil below, and making a calculation as to the cost of the additional labor and material necessary to accomplish the change, appellee met with the three members of the board and the architect in the appellee's temporary office that had been put up on the court-house square. Appellee then informed the members of the board that he thought that the construction of such a subbasement as he understood that they wanted would cost about $20,000. It was finally orally agreed that such subbasement should be put in, and that the architect should make an estimate, presumably of the cost, later. The following agreement was then reduced to writing, and signed by the three commissioners and the appellee: "It is hereby stipulated and agreed by and between the board of commissioners of Fulton county, Indiana, and Jordon E. Gibson, contractor, that said Gibson shall remove and excavate the earth, from the bottom of the proposed new court-house, at Rochester, Indiana, to a depth that shall be sufficient to establish a firm and safe foundation thereunder, and concrete the same as is provided in the order

therefor, this day made, and is to construct and complete entire a subbasement therein, furnish all material, and iron and steel work, necessary to do a first class job. And it is further agreed that the total cost of which shall not exceed the sum of $20,000, the exact amount of said work, under said sum, shall be paid on presentation of a certificate of A. W. Rush, architect. Dated June 12, 1895."

The specifications that were a part of the original contract contained, among others, the following provisions: "The drawings and writings are intended, together, to cover the entire and perfect completion of the work in every respect, and everything described or shown or reasonably implied by them, and which may be necessary for the perfection of the work and general excellence of the whole is to be included and will be required, whether specially mentioned in these specifications or particularly shown by the drawings. The drawings and writings together are intended to cover the entire completion of the building in every particular and anything described or shown or reasonably implied by them, and which may be necessary for the perfection of the work and the general excellence of the whole and to render the building fit for occupancy, is included. The architects will   *   *   *   decide on the quantity, quality, and value of the materials offered, omitted, claimed as extra,   *   *   *   . On these points the architects' decision will bind all parties. Excavation will be made for all walls, footings, and piers according to the area and the several depths required by the plans and sections, and so that all foundations will go down and rest on solid ground." It is further provided in said specifications that "all footings for piers, columns, and the walls of the building are to be laid below the basement floor line and to the depths shown on sections."

The fourth section of the contract authorized the board to make changes, and provided that "the difference for work omitted, as aforesaid, shall be deducted from the amount

of this contract, by a reasonable and proper valuation there-
of, and for any additional work required, as aforesaid, in
alterations, or modifications of said work, the amount based
upon same prices, at which contract is taken, shall be agreed
upon, before commencing additions, alterations or modifica-
tions aforesaid, as provided and hereinafter set forth in the
seventh clause of this contract." The sixth section of the
contract is as follows: "Should any dispute arise, respect-
ing the true construction, interpretation or meaning of the
drawings or specifications, or of any part thereof, or as to
what is extra work, outside of the contract, the same shall
be decided by A. W. Rush & Son, architects, and the said
board, and their decision shall be final and conclusive."
The seventh section of the contract contained the following
provision: "No new work of any description done on the
premises, or any work whatsoever, shall be considered as
extra, unless a separate estimate in writing for the same,
before its commencement, shall have been submitted by the
contractor to the superintending architects and the board of
commissioners, and their signatures obtained thereto."

After the contract of June 12, 1895, was executed, the
appellee constructed said subbasement, and in doing so he
put in the footings for the exterior walls nine feet below the
depth of the trenches as originally dug, and made corre-
sponding changes in the depths of the foundations for the
interior walls and tower piers. There is testimony in the
record which conflicts with many of the above statements,
but we have set out the evidence in outline, except upon the
subject of values, that tends to support the verdict. Upon
the completion of the building, appellee filed his said claim
with the board of commissioners, but the claim was disal-
lowed.

The first objection urged by appellant to the proceedings
of the court below is that said court overruled appellant's
motion to make the complaint more specific. The appellant
has attempted to present this question by an order of court

directing that the motion be made a part of the record without a bill of exceptions. That portion of the proceedings is not a part of the record, for two reasons: (1) Because it does not appear that the order of court, by which it was sought to bring said motion into the record, was made on the motion of either party (§662 Burns 1901) ; (2) because the motion was not spread on the order book, as a part of the court's order (*Russ* v. *Russ,* 142 Ind. 471; *Close* v. *Pittsburgh, etc., R. Co.,* 150 Ind. 560; *Allen* v. *Hollingshead,* 155 Ind. 178; Ewbank's Manual, §27).

Appellant contends that its demurrer to each paragraph of the complaint should have been sustained, for the reason that, as it must have been known that the proposed work would cost to exceed $500, the board should have caused plans and specifications thereof to be prepared, and given notice of its purpose to let a contract for such construction, in accordance with the statute then in force. §§4243, 4244 R. S. 1881. This is practically an effort to set up the defense of *ultra vires* to a contract that has been fully executed by the opposite party. Such a claim, when, *ex aequo et bono,* the corporation ought to pay, is odious. The statute referred to was intended as a safeguard of the public interest, and we are disposed to enforce it according to its spirit. We do not think, however, that it was intended to apply to a case like this, where a sudden and unforeseen emergency confronts a board of commissioners after it has regularly let a contract for a public building, and where it is to be desired to avoid delay, and not to put a new contractor on the work, but to have the work continued by the general contractor for the construction of the building. In such a case, where it can be said that the new work is but an incident of a work before regularly contracted for, and where it does not appear that the act of the parties was a mere effort to evade the statute, we do not think that the statute is applicable. As said by this court in *Bass, etc., Works* v. *Board, etc.,* 115 Ind. 234, 243: "The statute

makes no provision for such a contingency as has happened in the present case, yet it is within the experience of all that such contingencies are likely to happen in the construction of public as well as private buildings. It would hardly do to assume that the legislature failed to consider that such a contingency might happen, or that it was intended in case it did happen, at whatever stage of the work, that the hands of the county commissioners should be tied until new plans and specifications were adopted and a new contract let. In the absence of any provision in the statute for such a case, we must assume that it was intended that the commissioners should exercise their best discretion in each case, according to the circumstances that should exist at the time. Whatever may be said about the binding force and effect of contracts made by commissioners under the circumstances disclosed, certainly, where a county board, in pursuance of its duty to erect public buildings for the county, has proceeded regularly to a point where a contractor abandons the work while it is in progress, and then, in the exercise of its discretion, procures others to furnish money, labor and material, so as to carry the work forward to completion, the county cannot, after accepting and enjoying the buildings thus completed, refuse to pay the money and the reasonable value of the labor and materials furnished at the request of the commisisoners. The doctrine of *ultra vires* does not absolve municipal corporations from the principles of common honesty. When a corporation has received the money or property of an individual, under color of authority, and has appropriated it to its necessary and beneficial use, it will not be heard to assert its want of power to pay the value of what it has received and still retains. In such a case, where the initiatory steps have been taken which authorize a municipality to proceed with a public work, persons who furnish money, labor or materials to the municipality, which are actually used in the work and retained by it, become equitably entitled to recover." See, also, *Board, etc.*,

v. *Cincinnati, etc., Co.,* 128 Ind. 240, 12 L. R. A. 502; *Smith* v. *Board, etc.,* 6 Ind. App. 153, and cases there cited. Where the parties act in good faith, the authority of the board to make changes, without complying with the statute referred to, should be determined, not primarily by the cost of the change, but by the relation that the change bears to the main work, and the circumstances that confront the commissioners when they order the change. The paragraphs of complaint in this case did not disclose an *ultra vires* contract. They fully show, also, that the work and materials done and furnished were in addition to the principal undertaking.

We will now consider the appellant's claim that the complaint, being in general assumpsit, is bad because it is disclosed that there was a special contract. We are not persuaded that this objection is presented by the demurrer to the complaint, as the fact of the existence of a prior special contract is pleaded to show that the board had authority to order additional work; but as the general proposition is many times presented, in a great variety of forms, in the voluminous brief of counsel for appellant, we deem it well to deal with this contention now. Of course, it is well settled in this State that, where a pleading does not allege whether a contract was oral or in writing, it will be presumed that it was oral. It is equally well settled that if a plaintiff count on an express agreement not alleged to be in writing he cannot recover on a written contract. But the fact that there exists a written obligation, measuring the rights of the parties, does not necessarily prevent the maintenance of an action on the implied promise. As is said in Stephens on Pleading (Andrew's ed.), §53: "The action of assumpsit lies where a party claims damages for breach of simple contract, *i. e.,* a promise not under seal. Such promises may be express or implied; and the law always implies a promise to do that which a party is legally liable to perform. This remedy is consequently of very large and

extensive application." This subject has received exhaustive discussion in the note to *Cutter* v. *Powell,* as reported in 2 Smith's Leading Cases (Hare and Wallace's notes, 7th Am. ed.), 17. It was there said at p. 63: "The confusion and obscurity which exist in the books, in relation to this matter of special and general assumpsits, have arisen from an erroneous impression that, when there has been a special contract, and the plaintiff brings general assumpsit, the special contract of the defendant is in some degree, or to some extent, the ground of the plaintiff's recovery. This impression arises from an error as to the legal nature and ground of general assumpsit, which rests only on a *legal* liability springing out of a consideration received; and the difficulty clears away if it is kept always in mind, that in no case in which general assumpsit is brought, though there may have been a special agreement, does the plaintiff legally ground his claim at all upon the special agreement or promise, nor derive any right from it, nor make it any part of his case; he proceeds exclusively upon the implied legal engagement or obligation of the defendant, to pay the value of services ordered or received by him." The learned annotators then state that if there has been a conventional measure of damages, foresettled by mutual agreement, the plaintiff shall not cut loose from it and claim the legal measure of damages; but they state that there are some cases that hold that the defendant "shall not be permitted to defeat a just claim by setting up a contract that he himself has broken." We quote this latter proposition to show that the action is not founded on the special contract. It is our view, however, as we will hereafter show, that the special contract marks the maximum of what may be recovered. *Kerstetter* v. *Raymond,* 10 Ind. 199, 204. Professor Pomeroy, in his work on Code Remedies, §542, in discussing whether a complaint or petition, substantially the same in its form and its allegations as the old common or general count in as-

sumpsit, is in accordance with the fundamental principles of the new procedure, says: "The courts have almost unanimously answered this question in the affirmative, and have held that such complaints or petitions sufficiently set forth a cause of action in the cases where the declarations which they imitate would have been proper under the former practice." This writer further says (§543): "Not only have the courts in this manner sanctioned the use of the common counts as appropriate modes of setting forth the plaintiff's cause of action; they have also held that another rule of the old practice is still retained by the codes. The rule thus declared to be in force is the following: When the plaintiff has entered into an express contract with the defendant, and has fully performed on his part, so that nothing remains unexecuted but the defendant's obligation to pay, he may, if he please, sue upon the defendant's implied promise to make such payment, rather than upon the express undertaking of the original contract; and to that end he may resort to a complaint or petition identical with the ancient common counts; except, as has already been shown, the averment of a promise may, and according to the better opinion should be omitted." Professor Pomeroy criticises the cases he cites in support of the above propositions, but he does so with the prefatory suggestion, that "in the face of this overwhelming array of authority it may seem almost presumptuous even to suggest a doubt as to the correctness of the conclusions that have been reached with so much unanimity." (§544.) The authorities on this subject are for the most part collected in the note to *Allen* v. *Patterson,* as reported in 57 Am. Dec. 542, 544. See, also, note to Stephen on Pleading (Andrew's ed.), §53. We now refer to the decisions of this court upon the subject. In *Kerstetter* v. *Raymond, supra* (at page 202), it was said that the code has not changed the procedure relative to the propriety of suing in general assumpsit in the following instances, among others: "1. 'Where the whole of such contract has been

executed on the part of the plaintiff, and the time of pay-
ment on the other side is past, a suit may be brought on the
special contract, or a general assumpsit may be maintained;
and in the last case, the measure of damages will be the rate
of recompense fixed by the special contract.' 2 Smith's
Leading Cases, 41; *Bank of Columbia* v. *Patterson,* 7
Cranch 299, 3 L. Ed. 351, 2 Curtis 540; 1 Bacon's Abr.
380; *Chesapeake, etc., Canal Co.* v. *Knapp,* 9 Pet. 541, 9
L. Ed. 222, 11 Curtis 476. 2. 'If there has been a special
contract which has been altered or deviated from in particu-
lars, by common consent, general assumpsit will lie,' etc.
2 Smith's Leading Cases, 42; *Dubois* v. *Delaware, etc.,
Canal Co.,* 4 Wend. 285; *Jones* v. *Woodbury,* 11 B. Mon.
169. 3. 'If there has been a special contract, and the plain-
tiff has performed a part of it according to its terms, and
been prevented by the act or consent of the defendant, or by
the act of the law, from performing the residue, he may in
general assumpsit recover compensation for the work actu-
ally performed, and the defendant cannot set up the special
contract to defeat him.' 2 Smith's Leading Cases, 43, and
cases cited; *Scobey* v. *Ross,* 5 Ind. 446. 4. Under the de-
cisions in this State, the following principle is also estab-
lished, to wit: 'That when one party to a special entire con-
tract has not complied with its terms, but professing to act
under it, has done for, or delivered to, the other party some-
thing of value to him which he has accepted,' etc., and the
time for performance of the contract is past, an implied
promise arises to the extent of the value, etc. *Lomax* v. *Bai-
ley,* 7 Blackf. 603; *Epperley* v. *Bailey,* 3 Ind. 72." In the
case of *Jenney Electric Co.* v. *Branham,* 145 Ind. 314, 316,
33 L. R. A. 395, this court said: "While the rule that one
may plead the common count and recover, notwithstanding
the evidence disclosed a special contract, would, upon first
impression, seem to be at variance with the ordinary rules
of pleading and practice, yet it has been repeatedly held
that under our code such recovery may be had. *Scott* v.

*Congdon,* 106 Ind. 268; *Shilling* v. *Templeton,* 66 Ind 585; *Brown* v. *Perry,* 14 Ind. 32; *Kerstetter* v. *Raymond* 10 Ind. 199." In connection with the question of pleading that we have been discussing we quote, for the purpose of meeting many objections urged by appellant's counsel to the writings that appellee put in evidence upon the trial, the concluding statement in the case of *Kerstetter* v. *Raymond, supra:* "A late writer on evidence holds the following language: 'Where in a suit for the price of work and labor performed, it appears that work was commenced under an agreement in writing, the agreement must be produced; and even if the claim be for extra work, the plaintiff must still produce the written agreement; for it may furnish evidence, not only that the work was over and beyond the original contract, but also of the rate at which it was to be paid for.' 1 Greenl. Ev., §87." There is still another reason why the appellee properly sued on an oral contract, and that is that the agreement of June 12, 1895, amounted in law to an oral contract. This agreement, while it provided for the performance of the work and the furnishing of the material, and provided that the price therefor should not exceed $20,000, did not fix the price. It was therefore not a complete written contract, and was properly declared on as an oral contract. *Gordon* v. *Gordon,* 96 Ind. 134; *Louisville, etc., R. Co.* v. *Reynolds,* 118 Ind. 170; 2 Ency. Pl. & Pr., 1010. The writing did not in and of itself fix a liability, but it had more of an evidentiary character, as tending to show that the work was ordered by the board, that it was treated by the parties as an extra, and that a maximum price was fixed therefor.

The second paragraph of appellant's answer was insufficient. The appellee had alleged in his complaint that the work and material had been furnished in addition to what the contract required, and that, subsequent to the execution of the written contract, the board had directed him to do such additional work and furnish such additional material

"at such reasonable and just expense as the performance of the work in a proper manner, both as to work and material used, would call for." It is evident, in view of these allegations, that an answer that merely alleged the execution of the original contract between the parties, and made a copy of it an exhibit, did not state facts sufficient to bar the action. The third paragraph of answer did not amount to a plea of payment. There is no allegation that the indebtedness sued for was extinguished by payment.

The next question presented is whether the work and materials sued for can be considered as not covered by the contract. The plans distinctly provide what shall be the depth of the foundations below the grade line. There are some general provisions in the specifications, however, that furnish a basis for fair argument that the contractor was bound to put the foundations below the specified requirements, if necessary to get a good foundation. A so-called written contract between parties is, in a sense, not their contract; it is rather the evidence of their agreement that is back of the contract. For this reason, it must be an exceptional case where the practical construction that the parties have given to a contract of doubtful import will not control the courts in interpreting it. As said by the Supreme Court of the United States in *City of Chicago* v. *Sheldon,* 9 Wall. 50, 19 L. Ed. 594: "In cases where the language used by the parties to the contract is indefinite or ambiguous, and hence, of doubtful construction, the practical interpretation by the parties themselves is entitled to great, if not controlling influence." To the same effect, *Vinton* v. *Baldwin,* 95 Ind. 433, and authorities there cited; *Smith* v. *Board; etc.,* 6 Ind. App. 153; *Frazier* v. *Myers,* 132 Ind. 71; *City of Vincennes* v. *Citizens, etc., Co.,* 132 Ind. 114, 16 L. R. A. 485; *Fidelity, etc., Co.* v. *Teter,* 136 Ind. 672; *Wilson* v. *Carrico,* 140 Ind. 533, 49 Am. St. 213; *Childers* v. *First Nat. Bank,* 147 Ind. 430.

Appellant urges that there was error in permitting ap-

pellee to offer evidence of the market value of the extra material and labor furnished, because the prior contract provides a different method of ascertaining such value. It is true that the original contract does contain a provision that the amount to be paid for extras shall be based upon the same prices at which the contract is taken. It is provided, however, that this amount "shall be agreed upon before commencing the additions, alterations or modifications." The evidence shows that there was no agreement as to the amount that should be paid for extras, except that a maximum amount was fixed, and we are of opinion, as the board let the contract for the entire building at an aggregate price, so that the price of any item of work or material entering into the building as originally designed was not capable of being ascertained, and as the parties had omitted to agree in advance of the furnishing of the extra work and labor what price should be charged therefor, that *prima facie* the cash market value is to be taken as the equivalent of the contract price. After such a course had been pursued by the parties as the evidence here indicates, the appellee was not required to offer evidence of values by witnesses who were acquainted with the value of every item of material and of labor that entered into the construction of the entire building, and then resort to the cumbersome method of showing the price that ought to be paid for the extras on the basis of what like materials and labor were presumptively charged for, in view of the original aggregate price. As it must be a matter of presumption after all, the fairest and most simple method of fixing the value is to test it by the market price. It may be suggested, in passing, that a considerable item of extra material and work—for putting in the concrete footings—represented a different class of material and work from what was included within the original contract. At any rate, the court properly received evidence of the cash market value in support of the averments

of the complaint, and it was for appellant to avail itself of a different arrangement.

The omission of the appellee to procure a certificate from the architect as to the value of the extra work cannot affect the right of recovery in this form of action. If such stipulation be regarded as valid, it may be said that appellee did not fully perform his special contract, but the courts were still open to him under the common counts. In *Adams* v. *Cosby,* 48 Ind. 153, 158, this court said: "If this suit was founded on the special contract, they might have some significance. Obtaining the certificate of the architect was not a condition upon which the right of the appellee to recover depended, nor was the performance of any other stipulation in the special contract necessary to his recovery in this suit. The case is founded on materials furnished and work done, subject to damages, if any, arising from the breach of the special contract by the appellee. The rights of both parties were open to be settled according to the facts proved, notwithstanding the special contract." To the same effect, *Board, etc.,* v. *O'Connor,* 137 Ind. 622.

This brings us to a consideration of the sixth section of the original contract, which provides that, if any dispute shall arise as to the true construction of the contract or as to what is extra work, the matter shall be determined by the architect and the board, and their decision shall be final and conclusive. A sufficient answer to the effort of appellant's counsel to interpose these provisions as a defense would be the suggestion that by its order of June 12, 1895, the board determined the question as to the true construction of the drawings and specifications, and as to whether the work appellee now claims compensation for was an extra, in his favor. The agreement mentioned, however, did not bind the appellee. Without pausing to determine whether there are other legal objections to the provisions of the sixth section of the contract, it is sufficient to say that a plain reason why such provisions will not be enforced is that the law will

not permit a party making a contract to provide that he shall arbitrate his own cause, and that his decision shall be final and conclusive. See *Supreme Council, etc.,* v. *Forsinger,* 125 Ind. 52, 9 L. R. A. 501, 21 Am. St. 196.

There is no merit in the claim of appellant that the county cannot be charged with an assumpsit, although labor and material have been done and furnished for it, and the same have been accepted and used by the county, because of the informal character of the board meeting at which such matters were agreed to. The individual members of the board seem to have been actively engaged in superintending the erection of the building, and we think that as individuals they are to be so far regarded as agents of the county as to be able to charge the county on a *quantum meruit* for a subbasement that the county is enjoying the benefit of. *Board, etc.,* v. *Byrne,* 67 Ind. 21; *Board, etc.,* v. *Hill,* 122 Ind. 215; *Board, etc.,* v. *O'Connor, supra.*

Appellant's counsel discuss in their brief a number of rulings upon the part of the court in rejecting evidence offered by appellant on its case in chief. Most of the objections urged are not available, either for the reason that there was no offer to prove, or that the offer was made after the court had ruled on the objection to the question. *Deal* v. *State,* 140 Ind. 354, 371; *Gunder* v. *Tibbits,* 153 Ind. 591; *Wilson* v. *Carrico,* 140 Ind. 533; *Miller* v. *Coulter,* 156 Ind. 290. The witness Mills was asked by appellant, on his direct examination, the following question: "You may state to the jury what, if any, value the concrete that you examined possessed as a foundation for a court-house?" Such concrete might possess no value, because the stone footings might have furnished a sufficient foundation, but, if the board ordered the concrete put in, the question of its value or utility was for the board to determine. To prove that it had no value as a foundation did not tend to prove that the work and material were not proper, and did not afford any necessary reason why the same should not be paid for. The

two questions asked relative to cracks in the walls and plastering were leading, because they assumed that such cracks did exist. If appellant had first asked as to the condition of the walls and plastering, and, having proved that they were cracked, had then asked as to the cause of such condition, such proposed evidence might have been competent, as tending to prove that the work or material in the concrete footing was improper. But as the record stands there was no question asked that was calculated to draw out the claimed fact that the cracks were caused by the foundation. Appellee's counsel objected to the two questions that we have been considering on the ground that the proposed evidence was not within the issues. It is unnecessary to determine this question.

Appellant's counsel make a general statement in their brief that the court erred in permitting a cross-examination of one of its witnesses upon a matter foreign to the examination in chief. An examination of his testimony has not disclosed that such ground of objection exists. If such error existed, however, we should be compelled to hold, in view of the fact that the transcript in this cause contains more than 1,300 pages of typewritten matter, that we are not under obligation to search for that which it was the duty of counsel to point out.

Appellant's counsel to some extent discuss the instructions given by the court and those tendered by appellant and refused by the court. The method adopted by appellant to bring these instructions into the record was not by a bill of exceptions, but by marginal notations, as provided for by §544 Burns 1901. Appellee's counsel insist that the alleged errors in giving and refusing instructions are not presented, because there is no showing that all of the instructions given are in the record. It is set out in the transcript of the order-book entries that both parties requested the court to instruct the jury in writing. Under date of February 7, 1900, the order-book entry states that "the court thereupon instructs

the said jury, which said instructions of the court are in writing, and are filed herein, and are in these words, to wit: (here follow the instructions with marginal notations of exceptions thereon). Appellant's counsel contend that in view of this showing it should be presumed that the instructions given were all of the instructions, because it ought to be presumed that the trial court did its duty, and they cite *Tombaugh* v. *Grogg,* 156 Ind. 355, as supporting this position. It will be noticed that the clerk in his certificate does not go the length of stating that the instructions he sets out are all of the instructions given, but, as stated, appellant's counsel build their argument upon the fact that the order-book entry states that a request for written instructions was made, so that, if true, the court must be presumed to have regarded the request. This argument, however, is destitute of force, since a clerk's mere order-book entry is not the proper manner of exhibiting the fact of such request. The statute prescribes what entries shall be deemed a part of the record, but it provides that "a transcript of motions, affidavits, and other papers, when they relate to collateral matters, and depositions and papers filed as mere evidence shall not be certified, unless made a part of the record by exception [*sic*] or order of court, and directed to be certified by the appellant." §662 Burns 1901. The request to instruct in writing, being a mere collateral matter, is not properly shown by the clerk's recital, and, in view of the state of the record, we hold that it is not shown that all of the instructions given by the court are before us. Under the case of *State* v. *Winstandley,* 151 Ind. 495, we cannot reverse this cause because of any error in the giving or refusal of instructions. We have examined the instructions, however, that the record shows were given, and while our examination of them has not been critical, because, in view of the record, such examination was unnecessary, yet we may say that when read as a whole they seem to have fairly presented the law to the jury.

Judgment affirmed.