ZARKO SEKEREZ, TAXPAYER *v.* THE LAKE COUNTY BOARD OF COMMISSIONERS AND HARTMANN-SANDERS COMPANY.

[No. 3-1274A211. Filed April 27, 1976.]

*Zarko Sekerez,* pro se.

*Joseph L. Skozen, Skozen and Tebik,* of Munster, *Arch N. Bobbitt, Ruckelshaus, Bobbitt & O'Connor,* of Indianapolis, for appellees.

HOFFMAN, J.—Plaintiff-appellant Zarko Sekerez perfected this appeal following the entry of a judgment adverse to his interests in the trial court. The present action, which was brought pursuant to Ind. Rules of Procedure, Trial Rule 57, sought to have a contract which had been entered into between defendants-appellees The Lake County Board of Commissioners (Board) and Hartmann-Sanders Company (Hartmann) declared void by reason of the alleged failure of the Board to comply with certain statutory procedures regarding the award of public works contracts. The contract in question was for the purchase and installation of custom made tables for use in the court rooms and conference rooms of the Lake County government complex.

Following a hearing, the trial court entered findings of fact and conclusions of law which, omitting formal parts, are as follows:

## "FINDINGS OF FACT

"This action came on for hearing before the Court on the 19th day of February, 1974, and on the 21st day of May, 1974; plaintiff appeared pro se and defendants appeared by their attorney, Joseph L. Skozen; and the allegations and evidence of the parties and arguments of counsel having been heard and considered, the Court now finds as follows:

"1. That plans and specifications were prepared by L. Cosby Bernard, Jr., the architect selected by the defendant, Lake County Board of Commissioners, for Custom Woodwork for the court rooms in the Lake County Government Complex, and were approved by the Board of Commissioners. Bids were solicited by publication of notice, as provided by law, and were received on July 23, 1973, in the Office of the Auditor of Lake County from Woodwork Corporation of America, Union Cabinet Company and the Hartmann-Sanders Company.

"2. That on July 30, 1973, upon the recommendation of its architect, L. Cosby Bernard, Jr., the defendant, Board of Commissioners awarded said bid to defendant, Hartmann-Sanders Company as the lowest and best bid.

"3. That subsequent to said award, and on October 29, 1973, the architect discovered and informed the Board of Commisssioners that fifteen pre-finished doors had been in-

advertently ommitted [sic] from the plans; that in addition, pursuant to a suggestion by the Judges who will preside in the said court rooms (with which suggestion the architect concurred), it was found necessary to close the masonry openings in the five judges' chambers. This required additional material and labor to be furnished by the Hartmann-Sanders Company.

"4. That sometime after July 30, 1973, the Board of Commissioners and the architect visited the Hartmann-Sanders plant to inspect the quality of the material being processed and used by Hartmann-Sanders; that they then became aware that the tables for the court rooms and the conference rooms were not covered in the original contract, and determined to furnish tables, both straight and curved, and which would match aesthetically with the paneling of the court rooms; that the tables deemed best suited for the court rooms and conference rooms are not ordinary inventory stock items, but are custommade, and are installed and erected in place in the areas designated in the plans and marked Defendants' Exhibit E-1; that the Board of Commissioners then solicited and obtained bids for the construction, delivery and erection in place of the said custommade straight and curved tables, to blend with and to match the custom woodwork in the court rooms and chambers; that upon receipt of such bids, and upon the recommendation of the architect, it was determined that the proposal of the defendant, Hartmann-Sanders be accepted for the construction and installation of the custommade curved tables for the court rooms and five custommade straight tables for the sum of $8,380.00.

"5. That on November 19, 1973, the Board of Commissioners approved the above-described additional work, to-wit, the fifteen doors and the narrowing of the masonry openings at a total cost of $4,125.00 and $815.00, respectively, along with custommade tables to match the woodwork previously contracted for, and these items were added as a contract supplement to the original price specified in the contract of July 30, 1973, marked Plaintiff's Exhibit 1, without advertising for bids.

"6. That the defendant, Hartmann-Sanders Company, has fully performed its contract dated July 30, 1973, and the supplement thereto dated November 19, 1973, covering the work in issued [sic] herein.

"7. That the Board of Commissioners has complied with all statutes relative to public works and public purchases in allowing, approving and entering into a change order

dated November 19, 1973, for additional work to be performed supplemental to the original contract of July 30, 1973, with the Hartmann-Sanders Company.

"CONCLUSIONS OF LAW

"On the basis of the foregoing findings the Court concludes the law to be as follows:

"1.   This Court has jurisdiction over the parties and subject matter of this action.

"2.   The law is with the defendants.

"3.   That the Court finds that the bid of the Hartmann-Sanders Company and the contract dated July 30, 1973, complied with all statutes and laws of the State of Indiana, being IC 1971, 5-16-1-1, Burns Indiana Statutes, 53-108.

"4.   That the additional work to be performed under the agreement dated November 19, 1973 (Plaintiff's Exhibit 1) is supplemental to the contract originally entered into between the Board of Commissioners and the Hartmann-Sanders Company on July 30, 1973, constitutes a valid contract, and is not contrary to Public Works Statute IC 5-16-1-1, Burns Indiana Statutes, 53-108, and/or the Public Purchases Statute, IC 1971, 5-17-1-2, Burns Indiana Statutes, 53-501 and 502.

"5.   Plaintiff should take nothing by his Complaint."

The only issue presented for review is whether the trial court erred in finding that the Board "complied with all statutes relative to public works and public purchases in allowing, approving and entering into a change order dated November 19, 1973, for additional work to be performed supplemental to the original contract of July 30, 1973, with the Hartmann-Sanders Company." With the exception of the foregoing, the findings of fact entered by the trial court are not disputed.

Specifically, appellant contends that since the cost of the construction and installation of the tables was in excess of $5,000, the Board was required to "adopt plans and specifications and award a contract for such public work or improvement to the lowest and best bidder", under IC 1971, 5-16-1-1 (Burns Code Ed.); to advertise for bids under IC 1971,

5-16-1-3 (Burns Code Ed.); to "prepare specifications describing * * * the kind, quantity and quality of all materials * * * which may be needed for any designated period"; and to give notice "of the time and place for receiving of bids for the purchase of the materials," under IC 1971, 5-17-1-2 (Burns Code Ed.). Accordingly, appellant contends that the decision of the trial court finding that the Board was not required to do so is contrary to law.

It is to be noted that the contract in question, described as the change order dated November 19, 1973, was found to be supplemental to the original contract of July 30, 1973; and the tables, together with other items, were found to have been added "as a contract supplement to the original price" specified in such contract.

In *Board, etc.* v. *Gibson* (1902), 158 Ind. 471, 63 N.E. 982, our Supreme Court was confronted with the question of whether a Board of County Commissioners had exceeded the scope of its authority in entering into such a supplemental agreement without observing the requirements of statutes similar in object and effect to those presently under consideration. At 478-479 of 158 Ind., at 985 of 63 N.E., the court stated:

"The statute referred to was intended as a safeguard of the public interest, and we are disposed to enforce it according to its spirit. We do not think, however, that it was intended to apply to a case like this, where a sudden and unforseen emergency confronts a board of commissioners after it has regularly let a contract for a public building, and where it is to be desired to avoid delay, and not to put a new contractor on the work, but to have the work continued by the general contractor for the construction of the building. In such a case, *where it can be said that the new work is but an incident of a work before regularly contracted for, and where it does not appear that the act of the parties was a mere effort to evade the statute, we do not think that the statute is applicable.*" (Emphasis supplied.)

In a fundamentally similar context, the court in *Bass Foundry and Machine Works* v. *Board of Comm'rs. of Parke Co. et al.* (1888), 115 Ind. 234, at 242-43, 17 N.E. 593, at 597, stated:

> *"The provisions of the statute referred to apply manifestly to the original contract for the construction of the buildings therein enumerated and referred to.*
>
> "After a contract has been let in compliance with the provisions of the statute, and the work has been entered upon, whether the commissioners may, upon the default of the contractor, proceed by the employment of such agencies as are available and complete the building, must depend to some extent at least upon the circumstances of each particular case. In the event that a contractor should abandon his contract when the work is at such an incipient stage as that to complete it would amount practically to the construction of a court-house by county commissioners, without regard to the contract previously let, it might be a question whether contracts made by them for labor and materials would be binding as such upon the county. On the other hand, if, after the contract had been regularly let, the contractor had carried the work forward to such a state as that in the judgment of the commissioners the building could be completed substantially under the contract, by carrying forward and keeping in operation the agencies and forces already in motion, we can see no reason why that course may not be within the incidental power of the commissioners." (Emphasis supplied.)

Also, in the more recent case of *Peters et al.* v. *Ryan Construction Corp.* (1955), 125 Ind.App. 542, at 545, 127 N.E.2d 242, at 243, this court stated:

> "In this, as in other jurisdictions, it is firmly established that the authority authorized to let contracts for public works or improvements has an inherent right to make reasonable changes or modifications in such contracts. As indicated in many of the decisions, if this right were denied the work contemplated might become utterly useless because of some unforseen cause. *Sims* v. *Hines* (1889), 121 Ind. 534, 540, 23 N.E. 515; *The Bass Foundry and Machine Works* v. *The Board of Commissioners of Parke County et al.* (1888), 115 Ind. 234, 242, 17 N.E. 593; *The Board of Commissioners of Gibson County* v. *The Cincinnati Steam Heating Company* (1890), 128 Ind. 240, 243, 27 N.E. 612;

> *The Board of Commissioners of Hamilton County* v. *Newlin et al.* (1892), 132 Ind. 27, 31 N.E. 465; *The Board of Commissioners of Fulton County* v. *Gibson* (1901), 158 Ind. 471, 478, 63 N.E. 982; *The Board of Commissioners of Allen Co.* v. *Silvers* (1864), 22 Ind. 491, 502; *Smith et al.* v. *The Board of Commissioners of Miami County* (1892), 6 Ind. App. 153, 164, 33 N.E. 243; *Alsmeier et al.* v. *Adams et al.*, [1914], 62 Ind.App. 219, 235, 105 N.E. 1033; *Butler et al.* v. *City of Kokomo et al.* (1916), 62 Ind.App. 519, 526, 527, 113 N.E. 391."

In the case at bar, we are not left to consider whether the change order dated November 19, 1973, represented a contract supplement to the original contract of July 30, 1973. So much as bespeaks the incidental character of the later agreement is not an area of contention. Therefore, on the basis of the foregoing authorities it must be concluded that the statutory provisions hereinabove noted are not applicable in the case of the agreement in question.

No reversible error having been demonstrated, the judgment of the trial court must be affirmed.

Affirmed.

Staton, P.J. and Garrard, J., concur.

NOTE.—Reported 345 N.E.2d 865.